**Case No. 25-20513**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**Yvette S. Atkinson,**
*Plaintiff – Appellant*

*v.*

**Stephen Pustilnik; J.P. George; Vincent Morales; Grady Prestage; W.A. "Andy" Meyers; Kenneth R. DeMerchant; Fort Bend County, Texas; Dexter L. McCoy,**
*Defendants – Appellees*

---

On Appeal from the U.S. District Court for the Southern District of Texas (Houston Division)
Honorable Andrew M. Edison, Presiding
Civil Action No. 4:22-cv-04315

---

**APPELLANT'S BRIEF**

---

Eden P. Quainton, *pro hac vice*
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
(212) 419-0575
(212) 376-5699
eden.quainton@quaintonlaw.net

Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979)530-9523 (fax)
tyclevenger@yahoo.com

*Counsel for Plaintiff / Appellant Yvette Atkinson*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Yvette S. Atkinson, Plaintiff / Appellant
2. Stephen Pustilnik, M.D., Defendant / Appellee
3. J.P. George, Defendant / Appellee
4. Vincent Morales, Defendant / Appellee
5. Grady Prestage, Defendant / Appellee
6. W.A. "Andy" Meyers, Defendant / Appellee
7. Dexter L. McCoy, Defendant / Appellee
8. Kenneth R. DeMerchant, Defendant / Appellee
9. Fort Bend County, Texas, Defendant / Appellee
10. Ty Clevenger, Counsel for Plaintiff / Appellant
11. Eden Quainton, Counsel for Plaintiff / Appellant

**/s/ Ty Clevenger**
Ty Clevenger
Attorney for Yvette S. Atkinson

## STATEMENT REGARDING ORAL ARGUMENT

This case involves numerous parties, multiple constitutional claims, multiple points of error, and at least one novel issue. Some of those points are straightforward, but some of them are fact intensive, *i.e.*, questions about whether the district court abused its discretion. Plaintiff / Appellant Yvette Atkinson (hereinafter "Plaintiff") believes oral argument would help resolve some of the fact-intensive issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES ..........................................................................iv

STATEMENT REGARDING JURISDICTION .......................................................1

STATEMENT OF THE ISSUES..........................................................................2

STATEMENT OF THE CASE..............................................................................3

STATEMENT OF FACTS ....................................................................................4

STANDARD OF REVIEW ..................................................................................10

SUMMARY OF THE ARGUMENT ..................................................................11

ARGUMENT ........................................................................................................12

CONCLUSION......................................................................................................50

CERTIFICATE OF SERVICE ..............................................................................52

CERTIFICATE OF WORD COUNT.......................................................................53

# TABLE OF AUTHORITIES

## CASES

*Agostino v. Simpson*,
2008 WL 4906140 (S.D.N.Y. Nov. 17, 2008) ....................25

*Ahmed v. City of Natchez, MS*,
No. 5:21-CV-58, 2024 WL 1443181 (S.D. Miss. Apr. 3, 2024) ....................44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................21, 28, 36

*Barron v. United States*,
111 F.4th 667 (5th Cir. 2024) ....................21

*Bennett v. Slidell*,
697 F.2d 657 (5th Cir. 1983) ....................40

*Boazman v. Economic Laboratory, Inc.*,
537 F.2d 210 (5th Cir. 1976) ....................27 n.8

*Boudreaux v. La. State Bar Ass'n*,
3 F.4th 748 (5th Cir. 2021) ....................21

*Brady v. Fort Bend Cnty.*,
58 F.3d 173 (5th Cir. 1995) ....................20

*Brown v. Lee*,
371 S.W.2d 694 (Tex. 1963) ....................39

*Cain v. Tigard–Tualatin Sch. Dist. 23J*,
262 F. Supp. 2d 1120 (D. Or. 2003) ....................25

*Cantu v. Austin Police Dep't*, No.
1:21-cv-00084, 2021 WL 5599648 (W.D. Tex. Nov. 30, 2021) ....................39 n.11

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) .................... 6 n.2

*Cates v. Int'l Tel. & Tel. Corp.*,
756 F.2d 1161 (5th Cir. 1985) ....................................................................23

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ....................................................................................38

*Colson v. Grohman*,
174 F.3d 498 (5th Cir. 1999) .......................................................................21

*Comcast Corp. v. Houston Baseball Partners LLC*,
627 S.W.3d 398 (Tex. App. 2021) ...............................................................37

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ...............................................................................37, 38

*Covington v. City of Madisonville*,
812 F. App'x 219 (5th Cir. 2020) .................................................................49

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ...................................................................23-24

*Engquist v. Or. Dep't of Agric.*,
553 U.S. 591 (2008) ........................................................................11, 31-34

*Estate of Cervin v. Comm'r*,
111 F.3d 1252 (5th Cir. 1997) .....................................................................45

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ................................................................22, n.7

*Fennell v. Marion Indep. Sch. Dist.*,
804 F.3d 398 (5th Cir. 2015) .......................................................................35

*Foman v. Davis*,
371 U.S. 178 (1962) ....................................................................................23

*Garza v. Escobar*,
972 F.3d 721 (5th Cir. 2020) .......................................................................10

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*,
786 F.3d 400 (5th Cir. 2015) ....................................................................31

*Gomez v. H. Yturria Land & Cattle Co.*,
2005 WL 1981496 (Tex. App. Aug. 18, 2005) ................................39-40, 42

*Graham v. Bluebonnet Trails Cmty. Servs.*,
587 F. App'x 205 (5th Cir. 2014) ..............................................................29

*Gray v. Fid. Acceptance Corp.*,
634 F.2d 226 (5th Cir. 1981) ....................................................................10

*Hart v. Bayer Corp.*,
199 F.3d 239 (5th Cir. 2000) ....................................................................24

*Herring v. Blakeley*,
385 S.W.2d 843 (Tex. 1965) .....................................................................45

*Hitt v. City of Pasadena*,
561 F.2d 606 (5th Cir. 1977) ....................................................................24

*Hope v. Pelzer*,
536 U.S. 730 (2002) ..........................................................................13, n.4

*Houston v. El Paso Prod. Co.*,
179 F. App'x 213 (5th Cir. 2006) ..............................................................22

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) ........................................................................30

*In re Miramontes*,
648 S.W.3d 590 (Tex. 2022) .....................................................................29

*In re Refco Sec. Litig.*,
779 F. Supp. 2d 372 (S.D.N.Y. 2011) .......................................16 n.5, 20, 21

*Jackson v. Procunier*,
789 F.2d 307 (5th Cir. 1986) ....................................................................44

*Johnson v. Johnson*,
385 F.3d 503 (5th Cir. 2004) ....................................................30 n.10

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002) ................................................13, 18-19

*Lewis v. Eufaula City Bd. of Educ.*,
922 F. Supp. 2d 1291 (M.D. Ala. 2012) ..............................................17

*Liberte Capital Grp., LLC v. Capwill*,
421 F.3d 377 (6th Cir. 2005) ....................................................46 n.13

*Lindquist v. City of Pasadena*,
669 F.3d 225 (5th Cir. 2012) ............................................................34

*Marker v. Prudential Ins. Co. of Am.*,
273 F.2d 258 (5th Cir. 1959) ............................................................43

*McLemore v. Lumen Techs., Inc.*,
No. 25-30264, 2026 WL 252698 (5th Cir. Jan. 30, 2026) ..........................22

*Nairne v. Ardoin*,
715 F. Supp. 3d 808 (M.D. La. 2024) ................................................43

*Nairne v. Landry*,
151 F.4th 666 (5th Cir. 2025) ............................................................43

*Ortiz v. Consol. Edison Co. of N.Y., Inc.*,
801 F. Supp. 3d 260 (S.D.N.Y. 2025) ................................................21

*Porter v. Epps*,
659 F.3d 440 (5th Cir. 2011) ......................................................47, 50

*Reed v. Goertz*,
598 U.S. 230 (2023) .........................................................................37

*Rolf v. City of San Antonio*,
77 F.3d 823 (5th Cir. 1996) ..............................................................19

*Russell v. City of Lexington*,
2025 WL 875808 (S.D. Miss. Mar. 20, 2025) .......................................30-31

*Serena H. v. Kovarie*,
209 F. Supp. 2d 453 (E.D. Pa. 2002) ..........................................................17

*Shakeri v. ADT Sec. Servs., Inc.*,
816 F.3d 283 (5th Cir. 2016) .......................................................................15

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
91 F.4th 364 (5th Cir. 2024) ................................................................27 n.9

*Simi Inv. Co. v. Harris Cnty.*,
236 F.3d 240 (5th Cir. 2000) ...................................................................45-46

*Spivey v. Chitimacha Tribe*,
79 F.4th 444 (5th Cir. 2023) .........................................................................22

*Stotter v. Univ. of Tex. at San Antonio*,
508 F.3d 812 (5th Cir. 2007) .......................................................................28

*Stratta v. Roe*,
961 F.3d 340 (5th Cir. 2020) .......................................................................33

*Talley v. Brentwood Union Free Sch. Dist.*,
2009 WL 1797627 (E.D.N.Y. June 24, 2009) .............................................17

*Thompson v. Dallas City Attorney's Off.*,
913 F.3d 464 (5th Cir. 2019) .......................................................................43

*Thompson v. N. Am. Stainless,*
*LP*, 131 S. Ct. 863 (2011) ............................................................................17

*Torch Liquidating Trust ex rel. Bridge Assocs. v. Stockstill*,
561 F.3d 377 (5th Cir. 2009) .......................................................................21

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ..............................................................................35, 36

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000) ....................................................................................28, 34

*Washington v. Davis*,
426 U.S. 229 (1976) ....................................................................................35

*Zinnah v. Lubbock State Supported Living Ctr.*,
2023 WL 7314350 (5th Cir. Nov. 6, 2023) ....................................................24

**STATUTES**

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

42 U.S.C. § 1983..........................................................................................16

Tex. Code Crim. Proc. Ann. art. 49A.119 ....................................................32

Tex. Health & Safety Code Ann. § 191.052 ...............................18, 39, 41-42

Tex. Health & Safety Code Ann. § 193.005 ................................................32

**RULES**

Fed. R. Civ. P. 8 ..............................................................................16 n.5, 21

Fed. R. Civ. P. 12(b)(6) ...............................................4 n.1, 8 n.3, 12, 16 n.5

Fed. R. Civ. P. 19(c) ......................................................................6 n.

## STATEMENT REGARDING JURISDICTION

The district court had jurisdiction insofar as Plaintiff asserted federal claims against the Defendants. 28 U.S.C. § 1331. The district court entered a final judgment against the Plaintiff on October 8, 2025, *see* RECORD ON APPEAL (hereinafter "ROA") 1830, and the Plaintiff filed a notice of appeal on November 6, 2025. ROA 1831. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the Plaintiff was obligated to plead *explicitly* that Defendant Pustilnik's retaliatory acts would chill "a person of ordinary firmness" from exercising his or her First Amendment rights, or whether the pleading standard for the "chilling effect" is an objective one that should be deduced from the supporting facts……………………………………………...13

   A. The district court conflated two distinct theories of retaliation…….....................................................................................14

   B. The falsification of an official government document is objectively and inherently chilling……………………………………….……...…18

2. Whether the district court erred by dismissing Plaintiff's claims with prejudice and refusing to permit amendments……………………………..22

   A. The district court's own prior actions foreclosed the dismissal……...23

   B. The district court was obligated to afford leave to amend before dismissing with prejudice…………………………………………….23

   C. The district court abused its discretion given the procedural history of this case………………………………………...…………………27

3. Whether Plaintiff properly alleged equal protection claims against the Defendants……………………………………………………………….28

4. Whether Plaintiff properly alleged due process claims against the Defendants……………………………………………………………….37

5. Whether the supervisory Defendants are liable for the actions of Dr. Pustilnik…………………………...……………………………………..47

## STATEMENT OF THE CASE

Ms. Atkinson filed her original complaint on December 13, 2022. *See* Record on Appeal (hereinafter "ROA") 15. On May 2, 2024, the district court denied dismissal of the First Amendment retaliation claim against Dr. Pustilnik but dismissed all other claims. ROA 570-596. The court granted leave to amend on November 13, 2024, ROA 1011-1014, and Ms. Atkinson filed her Third Amended Complaint on January 27, 2025. ROA1504. Defendants moved to dismiss, and on October 8, 2025, the court dismissed all claims against all parties. ROA 1811-1829. Ms. Atkinson filed a notice of appeal on November 6, 2025. ROA 1831.

## STATEMENT OF FACTS

Plaintiff's husband, Simon J. Atkinson, died of a gunshot wound on June 5, 2020 in Sugar Land, Texas.[1] Third Amended Complaint (hereinafter "TAC") ¶14, ROA 1506. The Fort Bend County Assistant Medical Examiner, forensic pathologist William McClain, M.D., performed an autopsy within days and found no evidence of foul play. *Id*. The Sugar Land Police Department (hereinafter "SLPD") investigated and quickly concluded that Mr. Atkinson died of suicide. TAC ¶15, ROA 1506-07. SLPD performed firearms tests using the gun that was found near Mr. Atkinson's body, and SLPD used the ammunition that was found in Mr. Atkinson's pocket. TAC ¶15, ROA 1507. The striation marks matched, indicating (1) that the gun found near Mr. Atkinson's body was the gun that he used to kill himself and (2) that the ammunition in his pocket matched the fatal bullet. *Id*. Nothing at the scene where Mr. Atkinson's body was found indicated that there was a struggle or any sort of foul play, and the trajectory of the bullet was consistent with suicide. *Id*. Mr. Atkinson's body was released to the family and the body was cremated. *Id*.

[1] The Third Amended Complaint ("TAC") was the live complaint at the time the Plaintiff's claims were dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The pleadings therein are presumed to be true for purposes of a Rule 12(b)(6) dismissal, therefor the Plaintiff will cite the TAC for purposes of this appeal.

Plaintiff was entitled to receive $1 million in death insurance benefits, and she needed that money to keep the family business in operation and to support her son. TAC ¶16, ROA 1507. Approximately one week after the autopsy was completed, Plaintiff's brother, Steven Sanchez, called Dr. Pustilnik on behalf of Plaintiff and asked why there was no finding from the Medical Examiner's office regarding Mr. Atkinson's cause of death. TAC ¶17, ROA 1507. The assistant medical examiner for Fort Bend County had already conducted an autopsy and determined there was no evidence of homicide, and the SLPD had confirmed that the death was a suicide, *id*., but Mr. Atkinson's body could not be released for cremation without a death certificate. TAC ¶18, ROA 1507. A heated argument ensued between Mr. Sanchez and Dr. Pustilnik, but an interim death certificate was issued and the body was cremated. *Id*. Unfortunately, Dr. Pustilnik refused to issue a final death certificate that listed a cause of death, *id*., and the cause-of-death finding was necessary to obtain the life insurance proceeds. TAC ¶102, ROA 1530.

In the latter part of 2020, Mr. Sanchez began calling Defendant George and telling him that Dr. Pustilnik was refusing to issue a final death certificate that listed the cause of death, but Defendant George claimed he could do nothing. TAC ¶19, ROA 1508.

> For more than one year after the County Commissioners had been notified of Dr. Pustilnik's inexplicable dilatory conduct, Dr. Pustilnik would neither finalize the death certificate nor even convene an inquest to resolve any unanswered questions that he purportedly had.

TAC ¶20, ROA 1508. As part of his retaliation campaign, Dr. Pustilnik decided that he would convene an inquest and conduct his own firearms test. TAC ¶25, ROA 1509. Dr. Pustilnik had never performed a firearms test before and he had absolutely no qualifications to conduct the test, but he demanded that Plaintiff produce all 75 rounds of ammunition in her house. *Id*. The Court will recall that SLPD had already performed a firearms test *using the ammunition found in Mr. Atkinson's pocket*, and the striation marks matched those on the fatal bullet. TAC ¶15, ROA 1507. Dr. Pustilnik suggested that he did not believe the official conclusion of the SLPD and insinuated that Plaintiff was guilty of murdering her husband. TAC ¶29, ROA 1510.

Dr. Pustilnik received all of the ammunition on June 1, 2022, but took no action until Plaintiff's Counsel sent a letter to the Fort Bend County Commissioners Court on October 3, 2022 explaining the history of retaliation and bad-faith delays. TAC ¶31, ROA 1511.[2] In a letter dated October 5, 2022, counsel for the County Commissioners and the County blamed *Plaintiff* for the delays, alleging that the delays were Plaintiff's fault because she did not produce all of the ammunition sooner. TAC P32, ROA 1511. That letter demonstrated that as of October 5, 2022,

[2] The October 3, 2022 letter can be found at ROA 211-212 and it was incorporated by reference in the Second Amended Complaint and attached as an exhibit to that complaint. ROA 195, ¶20. Although the exhibit was not attached to the Third Amended Complaint, it was again incorporated by reference, TAC ¶31, ROA 1511, and therefore it is still part of the live pleadings. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006)(Under Fed. R. Civ. P. 19(c), documents may be incorporated by reference from earlier pleadings).

the County Commissioners had already ratified Dr. Pustilnik's performance of an unnecessary examination that was outside the scope of his office and far beyond his competency. *Id*. In an email dated October 13, 2022, Plaintiff's counsel expressly informed all Defendants that Dr. Pustilnik was retaliating against Plaintiff and warned the County and the Commissioners that they could be held liable for Dr. Pustilnik's retaliation against Plaintiff. TAC ¶36, ROA 1512. In another email on October 13, 2022, Plaintiff's Counsel warned that the whole firearms test would be "bogus and wholly unwarranted, and we intend to present expert testimony to that effect."

> Relatedly, we believe that if the commissioners looked into the matter, they would learn the same thing. For that reason, we believe the commissioners will be subject to supervisory liability if they fail to take immediate action to reign in Dr. Pustilnik.

TAC ¶39, ROA 1513. The Commissioner Defendants ignored the email and allowed Dr. Pustilnik to proceed with his bogus firearms test. TAC ¶40, ROA 1513. When the Plaintiff filed suit on December 13, 2022, ROA 3 – more than two years after Mr. Atkinson died – Dr. Pustilnik still had not issued a final death certificate listing a cause of death. TAC ¶41, ROA 1513. On January 30, 2023, nearly four months after Plaintiff had directly warned the Commissioners that Dr. Pustilnik was a dangerously incompetent examiner with a history preparing false, "unsubstantiated" and "unsupported" death certificates, Dr. Pustilnik released an updated death certificate. TAC ¶47, ROA 1516. Despite the fact that SLPD had closed its

investigation and ruled Mr. Atkinson's death a suicide, Dr. Pustilnik inexplicably declared the death was a homicide. TAC ¶48, ROA 1516. SLPD detectives and other medical examiners will testify that there was no basis to classify Mr. Atkinson's death a homicide, and certainly not on the basis of Dr. Pustilnik's bogus firearms test. TAC ¶50, ROA 1516.

Additional facts came to light during discovery.[3] Shortly after Mr. Atkinson's death, Dr. Pustilnik called the county judge, Defendant George, and falsely alleged that SLPD was investigating Plaintiff and her husband for "some shady business dealings." ROA 1247. "They don't know if they're pyramid schemes or investments where they're bilking investors out of money," he claimed. *Id*. He further alleged – falsely – that Plaintiff was not cooperating with the police. Id.

> Once [the police] found out that -- all this sort of unsavory financial dealings that Mr. Atkinson and his wife were doing, they realized that this family -- it's not just a simple case anymore. Okay? There's something weird going on.

ROA 1249. He told another county official that "the family, the decedent and his wife, were involved in some weird pyramid scheme, financial double-dealings of some sort." ROA 1239. In a conversation with the secretary for Defendant DeMarchant, he falsely alleged that there was a "financial incentive" for Mr.

[3] Facts outside the pleadings may not be relevant to a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), but they are included herein for purposes of determining whether the district court abused its discretion by (1) dismissing Plaintiff's claims with prejudice and (2) not permitting amendments to the pleadings.

Atkinson's death. In other words, Dr. Pustilnik slandered a grieving widow and her deceased husband as financial fraudsters, and he further slandered the widow by suggesting that she was motivated by those crimes to kill her husband.

## STANDARD OF REVIEW

A decision to dismiss claims on the pleadings is reviewed *de novo*. *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020), as is a decision about qualified immunity. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173 (5th Cir. 1995), dismissed (Nov. 17, 1995) A denial of leave to amend is reviewed for abuse of discretion, *United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 763 (5th Cir. 2025). A decision to dismiss claims with prejudice is also reviewed for an abuse of discretion, but under a heightened standard of review. *Gray v. Fid. Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir. 1981)

## SUMMARY OF THE ARGUMENT

The district court dismissed Plaintiff's First Amendment retaliation claim because she accidentally omitted a single sentence from an amended complaint. That sentence was unnecessary as a matter of law, and the district court abused its discretion by (1) dismissing the claim with prejudice and (2) failing to explain why it dismissed the claim with prejudice. The abuse of discretion was heightened by the fact that the Defendants sandbagged Plaintiff by sitting on the pleading issue until after the deadline for amending pleadings had passed. Moreover, the district court permitted extensive discovery to proceed for years before suddenly reversing course and dismissing the entire case based on that single pleading mistake. Under the circumstances, the district court further abused its discretion by dismissing the case without giving Plaintiff an opportunity to amend the pleadings to restore the missing sentence.

The district court erred as a matter of law in holding that Plaintiff failed to plead sufficient comparators to support a "class of one" equal protection claims. Plaintiff had, in fact, provided detailed information about other death-by-gunshot cases in Sugarland and Fort Bend County. The district court further erred by holding that Plaintiff's claims were barred by *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 603 (2008), which foreclosed "class of one" claims in the context of government jobs. Whereas that case and all of the others cited by the district court applied to

discretionary duties, Dr. Pustilnik had a mandatory duty to issue the death certificate for Mr. Atkinson. Contrary to the opinion below, Plaintiff also stated a standard equal protection claim insofar as she set forth evidence that Dr. Pustilnik retaliated against her based on her ethnicity.

The district court further erred when it held that Plaintiff failed to identify a property interest subject to the protections of the due process clause. The district court ignored binding authority and instead relied on non-binding authority for the premise that Plaintiff had no property interest in her husband's death certificate. The district court also relied on the wrong document in reaching its conclusions. Surprisingly (and more importantly), the district court ignored Plaintiff's property interest in her deceased husband's $1 million life insurance policy and its proceeds.

Finally, the pleadings properly establish supervisory liability insofar as the county commissioners were specifically warned of Dr. Pustilnik's ongoing retaliation, yet they failed to reign him in. Fort County is liable because the commissioners are final policy-makers for the county.

## ARGUMENT AND AUTHORITIES[4]

**1. Whether the Plaintiff was obligated to plead *explicitly* that Defendant Pustilnik's retaliatory acts would chill "a person of ordinary firmness" from exercising his or her First Amendment rights, or whether the pleading standard for the "chilling effect" is an objective one that can be deduced from the supporting facts.**

To state a claim for First Amendment retaliation, a plaintiff must plead: "(1) [she] engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [her] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). The second element "requires some showing that the plaintiff's exercise of free speech has been curtailed." *Id.* at 259. The first and third elements are not in dispute. ROA 1819. The only question is whether the TAC adequately alleged the second element—that Dr. Pustilnik's retaliatory conduct would chill a person of ordinary firmness from engaging in constitutionally protected activity.

[4] As a preliminary matter, qualified immunity protects governmental defendants from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "[T]he salient question … is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Id.* at 741 (internal quotation marks removed). The Court will note that all of the authorities hereinafter, with the exception of some cases about pleading standards, were decided prior to the events of this case or cite other cases that predate the events of this case. Accordingly, qualified immunity is unavailable to the Defendants.

The district court dismissed the retaliation claim because the TAC omitted a single sentence from the Second Amended Complaint (hereinafter "SAC"), ROA 190-225, in which Ms. Atkinson stated that "if another family member dies in Fort Bend County (God forbid), [she] now knows that she had better not make any complaint to or about [Dr.] Pustilnik lest he retaliate again." ROA 1819, *Atkinson*, 2024 WL 1937860, at *8. According to the district court, this omission was fatal because Ms. Atkinson "does not allege that Dr. Pustilnik's alleged actions curtailed her speech." ROA 1822. That analysis was erroneous for two independent but related reasons.

**A. *The district court conflated two distinct theories of retaliation.***

The chilling-effect language the district court found dispositive was tied to a theory of retaliation that the court itself had already rejected. The SAC advanced two separate retaliation theories. Paragraph 42 advanced the *delay theory*—that Dr. Pustilnik retaliated against Ms. Atkinson by delaying issuance of the death certificate after her brother's complaints. The subjective chilling-effect allegation ("if another family member dies in Fort Bend County . . . she had better not make any complaint to or about Defendant Pustilnik") was pleaded in support of that theory. SAC ¶42, ROA 206. Paragraph 43 advanced a separate *falsification theory*—that Dr. Pustilnik further retaliated by falsely classifying Mr. Atkinson's death as a homicide after Plaintiff filed this lawsuit. SAC ¶43, ROA 206.

In its May 2, 2024 opinion, the district court sustained the falsification theory and dismissed the delay theory. *Atkinson v. Pustilnik*, 2024 WL 1937860 (S.D. Tex. May 2, 2024) (*5-*7 (delay); *9 (falsification); ROA 578–581 (delay), 581-584 (falsification). The Third Amended Complaint focused on the surviving falsification theory, alleging that Dr. Pustilnik falsified an official death certificate by classifying Mr. Atkinson's death as a homicide in retaliation for the filing of this lawsuit. TAC ¶¶47–48, 52, 87, ROA 1516–1517, 1523. Yet when the district court dismissed the Third Amended Complaint, it demanded the very chilling-effect language that had been drafted to support the delay theory—a theory the court itself had already rejected. Insofar as the district court relied on the wrong theory, it was in error.

The district court likewise erred in the earlier dismissal when it held that Plaintiff had no First Amendment claim arising from the delay. Even though Plaintiff amended her complaint to omit Paragraph 42 of the Second Amended Complaint, that delay claim is nonetheless properly before this Court. *See Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 292 (5th Cir. 2016) (When a plaintiff amends her complaint in response to a partial dismissal on the pleadings, she need not re-plead that claim in her subsequent amended pleadings).[5] Paragraph 42 reads in relevant part as follows:

---

[5] *Shakeri* raises an interesting question: If Paragraph 42 of the SAC is properly before this Court for purposes of the falsification claim, is it also properly before this Court for purposes of the delay claim? Plaintiff has found no authorities on point. If, however, "[p]leadings must be construed so

> The Plaintiff brings claims against the Defendants under 42 U.S.C. §1983 for First Amendment retaliation. Mr. Sanchez petitioned for redress of grievances on Ms. Atkinson's behalf, and Defendant Pustilnik retaliated against Ms. Atkinson by delaying issuance of the death certificate. Had she known that Defendant Pustilnik would retaliate by delaying issuance of the death certificate, Ms. Atkinson would have insisted that her brother refrain from contacting Defendant Pustilnik. And if another family member dies in Fort Bend County (God forbid), Ms. Atkinson now knows that she had better not make any complaint to or about Defendant Pustilnik lest he retaliate again.

SAC ¶42, ROA 206. That delay was triggered, in particular, by the heated phone call between Dr. Pustilnik and Plaintiff's brother, Steven Sanchez. SAC ¶¶13-14, ROA 192-193. In dismissing that claim, the district court faulted Plaintiff because she did not specifically allege that Dr. Pustilnik knew that Sanchez was her brother, ROA 580, but when the SAC is read in its entirety, it is only reasonable to infer that Sanchez would have told Dr. Pustilnik that he was Plaintiff's brother.[6] *See, e.g.,* SAC ¶14, ROA 1493 ("Mr. Sanchez told Defendant Pustilnik that Plaintiff could not collect insurance benefits because of the delayed death certificate, and their discussion quickly turned into a heated argument"). The district court further rejected Plaintiff's claim on the premise that Plaintiff did not provide enough details to determine whether she had a sufficiently intimate relationship with her brother to

---

as to do justice," Fed. R. Civ. P. 8(e), and that principle applies generally to Fed. R. Civ. P. 12(b)(6) dismissals, *In re Refco Sec. Litig.*, 779 F. Supp. 2d at 377, then Plaintiff contends that the allegations about subjective chilling effects in Paragraph 42 should be considered by this Court for purposes of both of her First Amendment retaliation claims.

[6] Discovery later confirmed that Dr. Pustinlik knew that Sanchez was Plaintiff's brother. *See* ROA 1239, 1247, 1249 (transcripts of phone conversations from 2020 wherein Dr. Pustilnik acknowledged that Sanchez was Plaintiff's brother).

assert standing. That premise was in error, because numerous courts have held that third parties had standing to assert First Amendment retaliation claims:

> Often in First Amendment retaliation cases, the government is claimed to have retaliated against the plaintiff for her own speech; but the First Amendment may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff herself, but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for her perceived association with the other person and that person's speech. *See, e.g., Adler v. Pataki,* 185 F.3d 35, 45 (2d Cir.1999) (holding that "retaliatory discharge based solely on [protected speech] by one's spouse is actionable under the First Amendment"); *Talley v. Brentwood Union Free Sch. Dist.,* 2009 WL 1797627, at *6 (E.D.N.Y. June 24, 2009) (Hurley, J.) (citing *Adler* to uphold claim of retaliation against a daughter for her father's speech); *Cain v. Tigard–Tualatin Sch. Dist. 23J,* 262 F.Supp.2d 1120, 1127 (D.Or.2003) (Haggerty, C.J.) (upholding claim that defendant's retaliatory "conduct was motivated by [plaintiff's] association with his parents' speech"); *Agostino v. Simpson,* 2008 WL 4906140, at *5 (S.D.N.Y. Nov. 17, 2008) (Seibel, J.) (claim "alleging that Defendants took adverse action against Plaintiff in retaliation for [his father's] First Amendment activities"); *Serena H. v. Kovarie,* 209 F.Supp.2d 453, 458 (E.D.Pa.2002) (Brody, J.) (upholding "First Amendment claim [that] [the plaintiff] was retaliated against based upon her mother's exercise of free speech"); *cf. Thompson v. N. Am. Stainless, LP,* —U.S. ——, 131 S.Ct. 863, 867, 178 L.Ed.2d 694 (2011) ("We have little difficulty concluding that if [plaintiff's allegations that the defendant terminated his employment in retaliation for his fiancée's filing of a charge with the EEOC] are true, then [the defendant's] firing of [plaintiff] violated Title VII.").

*Lewis v. Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291, 1302–03 (M.D. Ala. 2012). The district court plainly erred, and both First Amendment retaliation claims should be reinstated.

### B. *The falsification of an official government document is objectively and inherently chilling.*

Even setting aside the district court's conflation of the two theories of retaliation, the dismissal was wrong on the merits. The chilling-effect inquiry is an objective one: the question is whether the defendant's retaliatory actions "would chill a person of ordinary firmness" from exercising her First Amendment rights. *Keenan*, 290 F.3d at 258. The standard does not require a plaintiff to plead her *subjective* reaction to the defendant's conduct. *See id.* at 259-60 (reversing district court's error in requiring a showing of "actual" chilling; standard is objective, not subjective). Either the underlying facts are objectively sufficient to chill a person of ordinary firmness or they are not, and any subjective allegations about Plaintiff's reaction would be mere surplusage.

In *Keenan*, this Court reversed the district court's grant of summary judgment on a private citizen's First Amendment retaliation claim where the retaliatory acts included a felony traffic stop conducted with guns drawn, the filing of false police reports, and an unsuccessful criminal prosecution. 290 F.3d at 256–57. This Court held that those actions would chill a person of ordinary firmness from exercising constitutionally protected conduct. *Id.* at 258–62. Dr. Pustilnik's conduct—falsifying an official death certificate that carries prima facie evidentiary force under Texas law, *see* Tex. Health & Safety Code Ann. § 191.052, thereby publicly

branding a grieving widow as a suspected murderer—is at least as severe as the retaliatory traffic stop and false reports at issue in *Keenan*.

The Fifth Circuit has recognized that "[i]f government officials were permitted to impose serious penalties in retaliation for individual's speech, government would be able to stymie or inhibit exercise of rights in future and thus obtain indirectly result it could not command directly." *Colson v. Grohman*, 174 F.3d 498, 509 (5th Cir. 1999). *Colson* drew a line at "mere false accusations and vehement criticism" as insufficient to chill an elected official. *Id.* at 514. But that distinction only reinforces Plaintiff's position. In *Colson*, the defendant engaged in public criticism—speech directed at a public figure. Dr. Pustilnik did not merely make false accusations in public discourse; he exercised official government power to corrupt an official record that carries the force of law. Falsifying a government document with prima facie evidentiary force is the paradigmatic "serious penalty" that *Colson* warned against. It is categorically different from the kind of speech-versus-speech situation that this Court found insufficient in *Colson*.

Similarly, in *Rolf v. City of San Antonio*, this Court reversed a 12(b)(6) dismissal of a retaliation claim where the city initiated condemnation of the plaintiff's property in retaliation for opposing a construction project. 77 F.3d 823, 827–28 (5th Cir. 1996). As in *Rolf*, Dr. Pustilnik's retaliatory act was not mere speech or criticism—it was the misuse of official government processes to inflict

concrete harm. And the harm here is arguably greater: while a condemnation proceeding can be challenged and reversed, a falsified death certificate immediately and publicly destroys a family's reputation and blocks access to life insurance proceeds.

The district court's approach was further foreclosed by well-established pleading principles. "Federal pleading standards do not demand 'any magic words,' but instead only require plaintiffs to give fair notice of all claims brought against the defendant." *Barron v. United States*, 111 F.4th 667, 674 (5th Cir. 2024), citing *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 756 (5th Cir. 2021) ("[P]leading standards don't demand such precision in terminology or any magic words."). A court's consideration of a motion to dismiss on the pleadings "is not designed to be a game of 'gotcha.'" *Ortiz v. Consol. Edison Co. of New York, Inc.*, 801 F. Supp. 3d 260, 319 (S.D.N.Y. 2025), quoting *In re Refco Sec. Litig.*, 779 F. Supp. 2d 372, 377 (S.D.N.Y. 2011). Instead, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Third Amended Complaint alleged that Dr. Pustilnik falsified an official death certificate by classifying Mr. Atkinson's death as a homicide in retaliation for this lawsuit, contradicting the findings of the assistant medical examiner who

performed the autopsy and the law enforcement officials who conducted the investigation. TAC ¶¶ 47–48, 52, 87, ROA 1516–1517, 1523. The complaint further alleged that the falsified death certificate publicly branded Ms. Atkinson as a suspected murderer, TAC ¶46, ROA 1515, delayed life insurance proceeds for nearly three years, TAC ¶137, ROA 1536, and subjected her to a harassing, baseless investigation. TAC ¶27, ROA 1510. As a matter of "common sense," *Iqbal*, 556 U.S. at 679, any person "of ordinary firmness" would be chilled from filing suit against a government official if doing so would result in the falsification of official records to brand her as a murderer. The complaint "must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009). Those are the "properly drawn inferences" from the pleadings. *Id.* The district court's insistence on a specific allegation of subjective chilling—when the chilling effect is self-evident from the facts alleged—was error.

Finally, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The *Refco* court connected that principle to Rule 12: "On a motion to dismiss, 'a complaint must be read most favorably to the plaintiffs,' not the defendants; such a motion is not designed to be a game of 'gotcha.'" *In re Refco Sec. Litig.*, 779 F. Supp. 2d at 377, citing Fed. R. Civ. P. 8. Where, as here, the district court allowed the case to proceed through extensive discovery, *see, e.g.*, ROA 750 and 953, and

implicitly acknowledged that Plaintiff *could have* stated a viable claim, it is hardly just to reverse course and dismiss an entire case because a sentence was omitted from an amended pleading—particularly where, as discussed above, no such sentence was required.

**2. Whether the district court erred by dismissing Plaintiff's claims with prejudice and refusing to permit amendments.**

Less than a month ago, this Court reversed a lower court because it dismissed a complaint with prejudice, but without explaining why it dismissed the case with prejudice versus without. *McLemore v. Lumen Techs., Inc.*, No. 25-30264, 2026 WL 252698, at *2 - *3 (5th Cir. Jan. 30, 2026). That is exactly what happened in the case below;[7] thus the lower court's failure to explain its decision mandates reversal. *Id.*; *see also Houston v. El Paso Prod. Co.*, 179 F. App'x 213, 214 (5th Cir. 2006) (remanding case for explanation). As this Court has stated:

> A dismissal with prejudice procedurally prevents a party from seeking leave to amend, which motion would itself be reviewable for an abuse of discretion. *Spivey v. Chitimacha Tribe*, 79 F.4th 444, 446 (5th Cir. 2023). Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be "freely" given "when justice so requires," which standard "evinces a bias in favor of granting leave to amend."

*McLemore*, 2026 WL 252698, at *2.

[7] Neither the opinion nor the judgment below state whether the case was dismissed with or without prejudice, but the absence of such a statement means the case was dismissed with prejudice. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993) ("a dismissal is presumed to be with prejudice unless the order explicitly states otherwise").

### A. *The district court's own prior actions foreclosed the dismissal.*

When a district court evaluates a motion for leave to amend, the governing standard requires the court to assess, among other things, whether the proposed amendment suffers from "futility." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Fifth Circuit, "futility" means that "the amended complaint would fail to state a claim upon which relief could be granted," applying "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). By granting leave to file the Third Amended Complaint on November 13, 2024, ROA 1011–1014—after the Defendants had briefed their futility objections to three of Plaintiff's proposed claims, ROA 931–951—the district court necessarily made an implicit finding that the proposed complaint was not futile under the 12(b)(6) standard. The subsequent dismissal of that same complaint under Rule 12(b)(6) is logically inconsistent with the court's own prior determination. Moreover, by highlighting that its dismissal was based on the omission of previously approved language, a further amendment would obviously not have been "futile" since it would have involved no more than restoring the previous language.

### B. *The district court was obligated to afford leave to amend before dismissing with prejudice.*

The Fifth Circuit has long held that the "federal rules strongly favor liberal amendment to facilitate determination of claims on the merits." *Dussouy v. Gulf*

*Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). A "plaintiff's failure to meet specific pleading requirements should not automatically or inflexibly result in dismissal with prejudice." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000), citing *Cates v. International Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("[D]eficiencies do not normally justify dismissal without leave to amend, at least not in absence of special circumstances."). A complaint should only be dismissed under 12(b)(6) "after affording every opportunity for plaintiff to state a claim." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (citing *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)).

Even if the Third Amended Complaint had a pleading deficiency—a proposition Plaintiff contests for the reasons stated above—dismissal with prejudice was inappropriate without offering leave to amend, particularly where the alleged deficiency was the omission of a single sentence that was readily curable.

### C. *The district court abused its discretion given the procedural history of this case.*

Although the district court may not have had a duty to permit amendments *sua sponte*, it certainly had discretion to do so. *See Zinnah v. Lubbock State Supported Living Ctr.*, No. 23-10242, 2023 WL 7314350, at *2 (5th Cir. Nov. 6, 2023). The relevant question is whether the district court abused its discretion by failing to permit an amendment where it implicitly acknowledged that the case was

being dismissed on the basis of a readily curable pleading defect—the absence of a single sentence from an earlier version of the complaint.

When that fact is combined with the procedural history of this case, an abuse of discretion is all the more evident. The parties engaged in extensive discovery both before and after the district court permitted the retaliation claim to proceed. Six depositions were taken, including of the lead detective on the case, a senior firearms examiner, a medical examiner investigator, a justice of the peace, and law enforcement personnel. *See, e.g.*, ROA 1232–1463. The parties conducted multiple rounds of document discovery and exchanged extensive written discovery. *See, e.g.,* ROA 1790-1810. Meanwhile, Plaintiff was actively litigating a subpoena dispute with the Texas Attorney General's Office regarding Ryan Christopher, a Department of Public Safety firearms examiner whose testimony was material to the claims. *See* ROA 13 (hearing on discovery dispute) and ROA 1764-1774 (motion to quash subpoena). Multiple docket control orders and discovery deadlines were entered. *See, e.g.*, ROA 188, 236, 458, 625. Discovery was not due to close until October 31, 2025, and dispositive motions were not due until December 15, 2025. ROA 1752.

At the time of dismissal, Plaintiff was preparing a Fourth Amended Complaint based on evidence developed during discovery, including damning testimony about Dr. Pustilnik's slander campaign in which he falsely told county officials that Mr. Atkinson and his widow were involved in "some shady business dealings" and

"weird pyramid scheme, financial double-dealings." ROA 1239, 1247, 1249. Plaintiff had also recently identified a potential avenue to overcome the Attorney General's assertion of sovereign immunity with respect to the DPS firearms examiner, which would have materially strengthened the case at trial.

Yet on October 8, 2025—with discovery still open and dispositive motions not yet due—the district court reverted to the pleadings and dismissed Plaintiff's single remaining claim based on the omission of a single sentence from the Third Amended Complaint.

The procedural unfairness is compounded by Defendants' conduct. Plaintiff attached her proposed Third Amended Complaint to her motion to amend, ROA 890–930, and the parties engaged in extensive briefing about whether Plaintiff should be permitted to file it. ROA 931–951 and ROA 978–1010. The Defendants objected to three of Plaintiff's proposed claims on the grounds that they were futile, but they never objected to the pleadings about First Amendment retaliation, ROA 931–951—the only claim that had survived their previous motion to dismiss. Instead, they laid in wait until the district court accepted the Third Amended Complaint, ROA 1011–1014, and the deadline for further amendments had passed, ROA 625–627, then Dr. Pustilnik sandbagged Plaintiff by raising the issue in his new motion to dismiss and arguing for the first time that the missing sentence was fatal to her First Amendment claim. ROA 1100–1101.

The Defendants undoubtedly will argue that remand or reversal would be futile because limitations deadlines have now passed, thus it would not matter whether the case was dismissed with or without prejudice on remand, but that is not entirely true.[8] Plaintiff made the district court aware of additional claims that she learned about during discovery, ROA 11 and 1232–1266, *i.e.*, claims arising from the fact that Dr. Pustilnik went on a smear campaign shortly after Mr. Atkinson's death, falsely alleging that Mr. Atkinson and Plaintiff had been involved in financial improprieties. ROA 1239, 1247, and 1249. The lower court preemptively dismissed the case before she could add those claims. Unfortunately, limitations deadlines were nearing, so Plaintiff had no choice but to file those new claims in a separate proceeding. *See* Original Complaint, *Yvette S. Atkinson, et al., v. Stephen Pustilnik, M.D.*, Case 4:25-cv-04923 (S.D. Tex.).[9] Perhaps unsurprisingly, Dr. Pustilnik filed a motion to dismiss arguing that because the case before this Court was dismissed with prejudice, *Atkinson II* is barred by res judicata. *See* Dr. Pustilnik's Motion to Dismiss Plaintiff's Original Complaint Under Rule 12, *Atkinson II*. Accordingly, the

[8] True enough, where a case has been dismissed without prejudice but the claims would still be foreclosed by limitations, this Court treats the dismissal as one with prejudice. *Boazman v. Econ. Lab'y, Inc.,* 537 F.2d 210, 212–13 (5th Cir. 1976). But that does not necessarily work in the Defendants' favor, because this Court applies a more stringent standard of review when a district court dismisses with prejudice. *Id*.

[9] The Court may take judicial notice of the pleadings from *Atkinson II*. *See Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 368 n.2 (5th Cir. 2024)(taking judicial notice of pleadings from related case). Plaintiff separately filed the *Atkinson II* pleadings and moved the Court to take judicial notice of them, *see* Doc. No. 27, and she renews that request here.

with-versus-without prejudice distinction is very much a live issue, namely because *Atkinson II* might be dismissed as a result of the case below being dismissed with prejudice.

Under the foregoing circumstances, the district court not only committed reversible error in failing to explain its dismissal with prejudice, it abused its discretion by sitting on its hands for nearly a year while the parties expended extraordinary resources on discovery, and then dismissing the case with prejudice based on a readily curable pleading defect. And if the missing sentence was truly necessary—which it was not, for the reasons stated above—then the district court abused its discretion by failing to offer leave to amend before dismissing with prejudice.

**3. Whether Plaintiff properly alleged equal protection claims against the Defendants.**

In *Village of Willowbrook v. Olech*, the Supreme Court reiterated that equal protection claims may be based on a "class of one" rather than a larger class based on broad criteria such as race or gender. 528 U.S. 562, 564 (2000). To state a "class of one" claim, the plaintiff must sufficiently allege that "(1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007). "An equal protection claim will fail… if no similarly situated comparator is identified or if a similarly situated comparator is identified but the facts reveal the

comparator is not actually similarly situated or was not treated differently." *See Graham v. Bluebonnet Trails Cmty. Servs.*, 587 Fed. App'x 205, 207 (5th Cir. 2014).

The district court dismissed the class-of-one claim principally because Plaintiff compared herself to decedents rather than to other living next-of-kin:

> [Plaintiff's] data shows that the time between Mr. Atkinson's death and the issuance of his final death certificate was 679 more days than the second-longest period for issuance of a death certificate since 2020. [TAC] at 16. Yet, Ms. Atkinson never explains how decedents can be similarly situated comparators to her, a living person. Indeed, Ms. Atkinson claims to be comparing herself to County residents whose next-of-kin died from a gunshot wounds [sic] and had a property interest in timely issued and accurate death certificates. *Id.* at 18. Yet, Ms. Atkinson does not identify any County residents or discuss any of the survivors of any of these decedents. Rather, she identifies only people who died in Sugar Land. The dead are not Ms. Atkinson's comparators. It is Ms. Atkinson who is asserting an equal protection claim, not her deceased husband. Ms. Atkinson's failure to identify individuals similarly situated to her dooms her claim.

ROA 1822-1823.

The district court's reasoning proves too much. A death certificate is issued not for the benefit of the decedent but for the surviving next-of-kin, who need it to settle estates, claim insurance, and manage their affairs. *See, e.g., In re Miramontes,* 648 S.W.3d 590 (2022). Every one of the 26 decedents discussed in the Third Amended Complaint necessarily had surviving next-of-kin who received timely death certificates—those are indeed Plaintiff's comparators. And they are in the identical legal position as Ms. Atkinson—next-of-kin with a property interest in the timely and accurate issuance of a death certificate—but they were treated vastly

more favorably. The district court's demand that Plaintiff name each survivor individually at the pleading stage was precisely the kind of hyper-specificity that the pleading standards do not require. As the Supreme Court has emphasized, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. As a matter of common sense, the names of other survivors were irrelevant. The only relevant comparison was the timeliness of the issuance of the death certificates.

The Second Circuit has specifically warned against the district court's approach. Writing about similarly-situated comparators, that court cautioned that "it is precisely in light of the inquiry's fact-intensive nature that we have cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019). The Southern District of Mississippi recently reached the same conclusion, holding that it was not necessary to plead comparators *at all* in an equal protection case. *Russell v. City of Lexington*, No. 3:23-CV-500-DPJ-ASH, 2025 WL 875808, at *10 (S.D. Miss. Mar. 20, 2025) (citing cases).[10] While *Russell* is not binding on this Court, the underlying

[10] Among the cases cited in *Russell* is *Johnson v. Johnson*, where this Court rejected the argument that an equal-protection plaintiff must identify a specific comparator in her complaint, 385 F.3d 503, 531 (5th Cir. 2004).

> There may be complaints that cannot survive without identifying a comparator (like when the pleaded facts do not otherwise present a plausible protected-class claim). But here, the

principle is sound: at the pleading stage, the question is plausibility, and Plaintiff's data—showing a 958-day delay against an average of 49.5 days for suicides and 91 days for homicides, TAC ¶55, ROA 1518—makes the inference of disparate treatment overwhelming.

The district court next concluded that the claim had to be dismissed because "the class-of-one rationale does not apply to forms of state action which by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments." ROA 1823, quoting *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015) (in turn quoting *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 603 (2008) (citation modified)). *Engquist*, of course, forbade class-of-one claims in public employment because of the "vast array of subjective, individualized assessments," but that standard is readily distinguishable from the present case. In fact, a single word distinguishes *Gil Ramirez* and all of the other cases cited by the district court, and that word is "discretionary." As opposed to a police officer's *discretionary* decision to arrest someone, ROA 1824, a supervisor's *discretionary* decision to fire someone, *id.*, or

non-conclusory facts in the FAC—when viewed in the light most favorable to Russell—"nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

*Russell*, 2025 WL 875808, at *10.

a prison official's *discretionary* decision to put an inmate in administrative segregation, *id.*, etc., Dr. Pustilnik had a ministerial *duty* to issue the death certificate. *See* Tex. Code Crim. Proc. Ann. art. 49A.119 (West) (a medical examiner "shall" issue a death certificate and "shall" record "the cause and manner of death."); *see also* Tex. Health & Safety Code Ann. § 193.005 ("person conducting an inquest required by Chapter 49, Code of Criminal Procedure, shall: (1) complete the medical certification not later than five days after receiving the death or fetal death certificate; and (2) state on the medical certification the disease that caused the death or, if the death was from external causes, the means of death and whether the death was probably accidental, suicidal, or homicidal, and any other information required by the state registrar to properly classify the death")(emphasis added). While Dr. Pustilnik had discretion in determining the cause of death, he had no discretion about whether to issue the death certificate, *id.*, thus *Engquist* and its progeny do not apply to that subject. And Plaintiff's claims are not limited to the falsified *contents* of the final death certificate; her claims also arise from the extreme and intentional delays in *issuing* the death certificate. Plaintiff alleged that she was unable to obtain the life insurance proceeds because of Dr. Pustilnik's bad-faith delays, and all Defendants affirmatively knew that his delays (*i.e.*, his refusal to perform a ministerial duty) were impeding her ability to collect the benefits. TAC ¶¶16, 80, and 102, ROA 1507, 1525, and 1530; *see also* October 3, 2022 Letter from Plaintiff's Counsel to

Commissioner Defendants, ROA 211-212 ("Unfortunately, Mrs. Atkinson has not been able to collect life insurance benefits because Dr. Pustilnik still has not produced a death certificate listing Mr. Atkinson's cause of death"). Thus *Engquist* offers no protection to any Defendants herein.

Moreover, even as to the *contents* of the death certificate, *Engquist* does not apply. The *Engquist* doctrine protects the routine exercise of professional judgment—the kind of discretionary assessment that inherently produces variation in outcomes. *See Engquist*, 553 U.S. at 603. But Dr. Pustilnik did not exercise routine professional judgment. He personally conducted an unauthorized firearms test for which he had no professional qualifications, TAC ¶¶22-27, ROA 1509-1510; he contradicted the findings of both his own deputy medical examiner and the Sugar Land Police Department, TAC ¶¶14-15, 48, ROA 1506-1507, 1517; and he did so only after Plaintiff filed this lawsuit, TAC ¶48, ROA 1517. Falsifying the factual basis for a death certificate is not an exercise of discretion that *Engquist* was designed to protect—it is an abuse of official power.

Significantly, the court below overlooked *Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020). In that case, the plaintiff sued a Texas water district for unequally applying its rules to him versus other property owners. *Id.* at 349. Although there certainly is discretion when applying rules to the facts (just as there is discretion when a police officer applies the law to the facts and then decides whether to arrest),

this Court did not apply the public-employee rationale of *Engquist*. Instead, it applied the standard criteria for a class-of-one claim:

> A class-of-one equal protection claim is based on two factors: whether the plaintiff was "intentionally treated differently from others similarly situated," and whether there was a "rational basis" for this difference. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012). *Lindquist* disavowed any precise formula to determine whether a plaintiff is similarly situated to comparators, holding instead that "the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant" must be considered. 669 F.3d at 234.

*Id.* at 360. The Court held that the plaintiff's "allegations of disparity and intentional conduct" were "sufficient to require further development rather than dismissal on the pleadings," *id.* at 361, and that rationale is far more analogous to the present case. Plaintiff previously discussed the allegations of disparity, and her complaint also provides allegations of "intentional conduct" by Dr. Pustilnik that was targeted uniquely toward her. The delays in issuing a final death certificate were caused substantially by his hellbent determination to perform a firearms test, something that he had never done before and something far beyond the scope of his job or qualifications. TAC ¶¶27 and 53, ROA 1510 and 1517. Furthermore, Dr. Pustilnik had never before taken over a case in which the autopsy had been performed by someone else. TAC ¶56, ROA 1518.

The district court also dismissed Plaintiff's disparate-treatment equal protection claim based on membership in a protected class. ROA 1825-1826. The court acknowledged that Ms. Atkinson alleged that Dr. Pustilnik "was motivated by ethnic, racial and/or gender animus," but concluded that "[a]llegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice." ROA 1825-1826, quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). This was error because the district court considered the allegations of discriminatory intent in isolation, ignoring the circumstantial evidence from which discriminatory intent can be inferred.

The Supreme Court has long recognized that discriminatory intent "may often be inferred from the totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976). In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), the Court identified several categories of circumstantial evidence relevant to proving discriminatory intent, including: the impact of the official action and whether it bears more heavily on one group than another; the historical background of the decision; the specific sequence of events leading up to the challenged decision; departures from the normal procedural sequence; and departures from normal substantive criteria. *Id.* at 266-68.

Every one of these factors is present here. As to impact, the Third Amended Complaint alleged that Dr. Pustilnik's conduct bore uniquely on a woman of

Mexican origin. TAC ¶5, ROA 1505. As to historical background, it alleged that Dr. Pustilnik's hostile interaction began when he argued with Plaintiff's brother, Steven Sanchez—a man with an identifiably Hispanic surname—and that the conflict escalated from there. TAC ¶¶17-18, ROA 1507-1508. As to departures from normal procedures, the complaint alleged an extraordinary cascade of anomalies: Dr. Pustilnik took over a case from the deputy medical examiner who had performed the autopsy—something he had never done before in any other case during his tenure. TAC ¶56, ROA 1518. He personally conducted a firearms test despite having no qualifications to do so—also unprecedented. TAC ¶¶22, 27, 34, ROA 1509-1510, 1512. He delayed issuance of the death certificate for 958 days, more than ten times the average. TAC ¶55, ROA 1518. And as to the sequence of events, the hostile confrontation with Sanchez preceded the delay, the lawsuit preceded the false homicide classification, and the County Commissioners ratified Dr. Pustilnik's conduct at every turn. TAC ¶¶31-40, ROA 1511-1513.

A plaintiff need not produce a "smoking gun" confession of bias to survive a motion to dismiss. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights*, 429 U.S. at 266. The question at the 12(b)(6) stage is simply whether the factual allegations, taken as true, "allow the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Third Amended Complaint did not merely assert discriminatory intent in conclusory terms; it pleaded a pattern of conduct so aberrant and so uniquely directed at this Plaintiff that discriminatory intent is a plausible—indeed, compelling—inference from the facts alleged.

**4. Whether Plaintiff properly alleged due process claims against the Defendants.**

Plaintiff asserted claims for both procedural due process and substantive due process violations. ROA 1826. According to the Supreme Court, "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955, 961, 215 L. Ed. 2d 218 (2023). "A substantive due process violation is an action government officials may not take no matter what procedural protections accompany them." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89–90 (5th Cir. 2011)(internal citations omitted). In the context of executive action by the government, the Supreme Court has held that "only the most egregious official conduct" can be a basis for substantive due process liability. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). With respect

to executive action, the Supreme Court has held that the abuse must be one that "shocks the conscience," *id.*, but that standard is met where "the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Rosales-Mireles v. United States*, 201 L. Ed. 2d 376, 138 S. Ct. 1897, 1906 (2018), quoting *County of Sacramento*, 523 U.S. 833, 849-850. Where, as here, a corrupt medical examiner *intentionally* withholds a death certificate for the *express* purpose of denying life insurance proceeds to a widow and her son, reasonable jurors could readily conclude that such behavior "shocks the conscience." In fact, if Defendant Pustilnik's misconduct did not shock the conscience of the public, then local media would not have reported that misconduct. *See* ROA 479, citing and attaching two local media reports.

The district court never distinguished between Plaintiff's procedural and substantive due process claims because it held that Plaintiff failed to plead an element that was necessary for either claim, *i.e.*, a constitutionally-protected property interest. ROA 17 (citing cases). The district court conceded that Plaintiff had a property interest in the physical death certificate for her husband, but it found no overall property interest because it "could not fathom the Fifth Circuit holding

that anyone has a property interest in an opinion" about Mr. Atkinson's cause of death. ROA 1829.[11]

The word "opinion" obviously can mean different things in different contexts. Perhaps the district court did not contemplate the fact that its "opinion" in this case was also an order, ROA 1811, and it carried the force of law. In Texas, a death certificate is prima facie evidence of the cause of death. Tex. Health & Safety Code Ann. § 191.052 ("A copy of a birth, death, or fetal death record registered under this title that is certified by the state registrar is prima facie evidence of the facts stated in the record"). "Applying section 191.052, Texas courts have specified that a recitation in a death certificate regarding the cause of death constitutes prima facie evidence that is subject to rebuttal." *Gomez v. H. Yturria Land & Cattle Co.*, No. 13-

[11] For that proposition, the lower court quoted a sentence from *Cantu v. Austin Police Dep.t*: "Plaintiffs have not stated a claim for a fundamental interest in a forensic death investigation carried out in the manner they prefer and have not alleged any property interest relating to [the decedent's] autopsy that would support a due process violation." ROA 1829, citing No. 1:21-cv-00084, 2021 WL 5599648, at *11 (W.D. Tex. Nov. 30, 2021). Consider the context of that quote:

> [The decedent's] body was transferred to the Travis County Medical Examiner's Office, where Dr. Vickie L. Willoughby performed an autopsy. *Id.* ¶ 8.10. Plaintiffs allege that Dr. Willoughby failed to include in her autopsy report all instances of Taser use on [the decedent's] body. *Id.* Plaintiffs also allege that Dr. Willoughby wrongfully allowed [decedent's] organs to be harvested, sent the wrong file to the funeral home, and attempted to send the wrong body. *Id.*

*Cantu*, 2021 WL 5599648, at *1. In other words, the *Cantu* plaintiffs alleged that Dr. Willoughby was *negligent* in performing the autopsy, disposing of the body, etc. Plaintiff herein has not, however, alleged negligence. She has alleged *intentional* delays and *intentional* falsification of a death certificate. More importantly, she never asserted a property interest in an autopsy or a forensic death investigation. Instead, she asserted a property interest in (1) a final death certificate and (2) life insurance proceeds.

03-00369-CV, 2005 WL 1981496, at *1 (Tex. App. Aug. 18, 2005)(citing cases). Thus an "opinion," in the context of a death certificate, is hardly the same as an "opinion" about the worst movie of the year or the best city to live in.

Furthermore, the district court's "opinion" analysis rested on a fundamental misapprehension of the record. There are two separate documents at issue: (1) the final autopsy report, ROA 1459-1463, and (2) the death certificate itself. ROA 1323-1324. The final autopsy report—prepared by Dr. Pustilnik—states that "[o]n the basis of examination, *and/or investigation*, in my opinion, death occurred at the time, date and place, and due to the cause(s) and manner stated." ROA 1829 (emphasis in original). Plaintiff's claims, however, do not arise from the autopsy report. Her claims arise from the death certificate, *see, e.g.,* TAC ¶89, ROA 1527 ("falsification of death certificate"), and the death certificate is an entirely separate government record that says nothing whatsoever about an "opinion." ROA 1323-1324. The manner-of-death field on a Texas death certificate requires a categorical factual determination: the medical examiner must select one of several fixed entries, including "homicide," "suicide," or "could not be determined." *Id*. Dr. Pustilnik checked "homicide"—without qualification, without hedging, and without any indication that it was a matter of professional judgment. In the context of the death certificate itself, the designation of "homicide" is a factual entry in a government record, not a professional opinion. It is that factual entry—not the autopsy report's

prefatory language—that carries prima facie evidentiary force under Texas Health & Safety Code § 191.052.

But even if the Court were to look past the death certificate to the autopsy report, the "opinion" framing still does not help the Defendants. The autopsy report's prefatory language refers to "examination, *and/or investigation*"—investigation in the plural. ROA 1829. In reality, there was only one legitimate investigation: the Sugar Land Police Department's investigation, which concluded that Mr. Atkinson died by suicide. TAC ¶¶14–15, ROA 1506–1507. Dr. Pustilnik's informal firing-range test—conducted by a medical doctor with no firearms or ballistics credentials whatsoever, TAC ¶¶22–27, ROA 1509–1510—was not a legitimate "investigation" within the meaning of the autopsy report's certification language. By representing on the autopsy report that his conclusion was based on plural "investigations," Dr. Pustilnik falsified the factual predicate for the very "opinion" the district court relied upon. The falsification of the factual basis for a professional opinion is itself actionable; the "opinion" label cannot insulate what is, at bottom, a material misrepresentation of the investigative record. *See, generally., Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 416 (Tex. App. 2021), *aff'd sub nom. McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907 (Tex. 2023)("[A]n opinion may be treated as an actionable statement of fact when the opinion is based on or buttressed with false facts").

Even accepting the district court's characterization of the manner-of-death designation as an "opinion," the analysis does not end there. In Texas, a death certificate is prima facie evidence of the facts stated in the record. Tex. Health & Safety Code Ann. § 191.052. "Applying section 191.052, Texas courts have specified that a recitation in a death certificate regarding the cause of death constitutes prima facie evidence that is subject to rebuttal." *Gomez*, 2005 WL 1981496, at *1 (citing cases). An "opinion" that carries the force of prima facie evidence—that shifts burdens of proof in litigation, that determines the disposition of life insurance claims, and that brands a surviving spouse as a suspected murderer—is not the kind of "opinion" in which no property interest can exist. It is a government act with immediate and concrete legal consequences, and Plaintiff has a constitutionally protected property interest in not having those consequences imposed through falsification.

The district court nonetheless concluded that the law was unsettled as to whether cause-of-death findings are facts or opinions:

> In Texas, "[c]ourts are split as to whether findings such as 'suicide' or 'accident' in a death certificate are facts or opinions." *Tex. Workers' Comp. Comm'n v. Wausau Underwriters Ins.*, 127 S.W.3d 50, 60 n.9 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (collecting cases from Texas state courts and the Fifth Circuit).

ROA 1828-1829. That conclusion was plainly erroneous for purposes of this case because the law was settled in the Fifth Circuit long ago. The district court relied on

footnote 9 of *Wausau Underwriters*, and among the many cases cited in that footnote is *Marker v. Prudential Ins. Co. of Am.*, 273 F.2d 258, 263–64 (5th Cir. 1959). *Marker* has never been overturned, and *Wausau Underwriters* itself cited *Marker* for the premise "that everything included in a death certificate was a fact, but that those facts were not binding on the jury and were subject to evidence to the contrary." *Marker* was binding authority and the district erred by not following it. *See, e.g., Nairne v. Ardoin*, 715 F. Supp. 3d 808, 832 (M.D. La. 2024), *aff'd sub nom. Nairne v. Landry*, 151 F.4th 666 (5th Cir. 2025) ("District courts are bound by their circuit's decisions unless a decision is overturned by an *en banc* decision of their circuit court or the Supreme Court").[12] Even this Court is bound by *Marker* unless that ruling is overruled by statute, by the Supreme Court, or by an *en banc* panel. *Thompson v. Dallas City Attorney's Off.*, 913 F.3d 464, 467 (5th Cir. 2019).

The district court strayed again when it held that there was no property interest in the death certificate because "Ms. Atkinson has had access to a physical death certificate since June 16, 2020, when Dr. McClain issued the initial death certificate." ROA 1828. Plaintiff did not file suit because she was denied an "initial" death certificate; she filed suit because she was denied a final death certificate that

[12] In the absence of Fifth Circuit authority, the intermediate state court decisions are only persuasive authority regarding state law. *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000). State court interpretations of state law are binding on federal courts only when the state's highest court resolves a particular issue. *Id.*

included a finding of the cause of death. TAC ¶102, ROA 1530. She needed that final certificate – complete with a cause-of-death finding – in order to obtain the life insurance proceeds. *Id*. As discussed above, Dr. Pustilnik had a statutory, ministerial duty to issue that final death certificate, complete with a cause-of-death finding, and Plaintiff had a statutory right to a copy of that final death certificate. In the context of a due process claim, "[m]erely alleging a lengthy delay occurred is insufficient." *Ahmed v. City of Natchez, MS*, No. 5:21-CV-58-DCB-BWR, 2024 WL 1443181, at *3 (S.D. Miss. Apr. 3, 2024)(delay in returning property seized pursuant to warrant), citing *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 547 (1985). But Plaintiff did not "merely" allege a lengthy delay. She alleged a nearly three-year delay that was both intentional and vindictive, designed to keep her from receiving life insurance benefits. Thus Plaintiff's case is even more extreme than that of the plaintiff in *Jackson v. Procunier*, where this Court permitted an inmate to bring substantive due process claims against prison officials who deliberately delayed his mail, causing him to miss court deadlines. 789 F.2d 307, 309 (5th Cir. 1986). Dr. Pustilnik's delays plainly interfered with Plaintiff's property interest in the final death certificate, *id.*, but her claim does not end there.

Frankly, it's surprising that the district court focused exclusively on whether there was a property interest in the death certificate, because the greater property interest by far is the $1 million life insurance policy. In *Herring v. Blakeley*, the

Texas Supreme Court recognized a beneficiary's interest in a life insurance policy as property. 385 S.W.2d 843, 847 n.3 (Tex. 1965)( "[T[his Court [previously] held that the right to receive insurance proceeds payable at a future but uncertain date is 'property.' The statutory definition of 'property' now includes 'insurance policies and the effects thereof'")(citing *Brown v. Lee*, 371 S.W.2d 694, 696 (Tex. 1963)). Such property is characterized as "a chose in action which matures at the death of the insured." *Brown*, 371 S.W.2d at 696. Citing Texas law, this Court has previously recognized a beneficiary's property interest in life insurance proceeds, further noting instances in which the beneficiary has a property interest in the policy itself. *Est. of Cervin v. Comm'r*, 111 F.3d 1252, 1256 (5th Cir. 1997).

Thus the larger question before this Court is whether Dr. Pustilnik violated Plaintiff's due process rights by interfering with the life insurance policy and proceeds. In *Simi Investment Co. v. Harris County*, this Court found Harris County liable for a substantive due process violation when it claimed ownership of a nonexistent five-foot by 3000-foot park solely to deny a private property owner lawful access to abutting city street, to which the owner was entitled under state law. 236 F.3d 240, 254 (5th Cir. 2000). Access to the street was a property right under Texas law, and mere interference with that right was sufficient to state a due process claim. *Id*. at 250. This Court previously upheld a due process claim where a building inspector arbitrarily delayed issuance of a routine occupancy permit following

complaints from the plaintiff's influential neighbor. *Bennett v. Slidell*, 697 F.2d 657 (5th Cir. 1983) (finding discriminatory intent and no rational basis), *rev'd in part on other grounds*, 728 F.2d 762 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). In *Bennett*, the delay in issuing the permit was approximately four months. 697 F.2d at 658-659. That's far less than Dr. Pustilnik's delay of nearly three years. No reasonable government official – medical examiner or otherwise – could have thought it was permissible to delay the issuance of a mandated certificate for that long. Dr. Pustilnik's years-long delay in issuing the final death certificate plainly (and intentionally) interfered with Plaintiff's property interest in the life insurance proceeds, thus he violated the due process rights of Plaintiff. *Id.* [13]

### 5. Whether the supervisory Defendants are liable for the actions of Dr. Pustilnik.

The district court dismissed Plaintiff's claims before reaching the issue of supervisory liability, but Plaintiff will address it briefly here in the interest of thoroughness. "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional

[13] Notably, the Sixth Circuit has expressly held that the beneficiary of a life insurance policy has rights that are protected by the due process clause. *Liberte Cap. Grp., LLC v. Capwill*, 421 F.3d 377, 384 (6th Cir. 2005).

rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). That's not hard to do in this case. Defendant George was first warned about Dr. Pustilnik's retaliation and bad-faith delays in 2020. TAC ¶19, ROA 1508.

> For more than one year after the County Commissioners had been notified of Dr. Pustilnik's inexplicable dilatory conduct, Dr. Pustilnik would neither finalize the death certificate nor even convene an inquest to resolve any unanswered questions that he purportedly had.

TAC ¶ 20, ROA 1508. On October 3, 2023, Plaintiff's Counsel wrote to all of the Commissioner Defendants explaining the nature of Dr. Pustilnik's ongoing retaliation against Plaintiff. ROA 211-212.[14] The letter noted that Dr. Pustilnik had not conducted Mr. Atkinson's autopsy, yet he was delaying issuance of the death certificate.

> The physician who actually performed the autopsy found no evidence of foul play, and that should have been the end of the matter. Unfortunately, it was not.
>
> Earlier this year, Dr. Pustilnik decided that he needed every single bullet that had been purchased for the gun fired by Mr. Atkinson. Dr. Pustilnik said he needed the 75 rounds in order to conduct firearms tests. That might not seem remarkable but for the fact that firearms tests are normally conducted by the police, and Dr. Pustilnik is not qualified to conduct a firearms test.

*Id*. On October 13, 2023, Plaintiff's Counsel wrote to counsel for the Commissioner Defendants:

[14] As discussed previously, *supra* n.5, the October 3, 2023 letter was attached and incorporated into the Second Amended Complaint, then incorporated by reference in the Third Amended Complaint.

> …I would note that the county judge and the commissioners are not protected by legislative immunity if they ratify ongoing retaliation against someone such as my client. *See, generally, Hughes v. Tarrant Cnty. Tex.*, 948 F.2d 918, 920 (5th Cir. 1991) and *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 774 (W.D. Tex. 2015). If there is a legitimate reason why Dr. Pustilnik cannot produce the death certificate by the end of the month, then please let us know. Otherwise, we will conclude that the county judge and the commissioners have ratified his actions toward my client, and we will proceed with federal litigation against them as well as the county and Dr. Pustilnik.

TAC ¶36, ROA 1512. In another email on October 13, 2022, Plaintiff's Counsel warned that the whole firearms test was "bogus and wholly unwarranted, and we intend to present expert testimony to that effect."

> Relatedly, we believe that if the commissioners looked into the matter, they would learn the same thing. For that reason, we believe the commissioners will be subject to supervisory liability if they fail to take immediate action to reign in Dr. Pustilnik.

TAC ¶39, ROA 1513. The Commissioner Defendants did nothing, TAC ¶41, ROA 1513, and on December 13, 2022 Plaintiff sued the Commissioner Defendants and Dr. Pustilnik, along with the county itself. ROA 15-36. The Original Complaint set forth additional evidence of Dr. Pustilnik's malice and bad faith, *e.g.*, his retaliation against Plaintiff's attorney, ROA 18-19, his terrible reputation among prosecutors and law enforcement, *id*. at 21, and the fact that in 2019 he had baselessly classified a death as a homicide. *Id*. at 32. Again, the Commissioner Defendants did nothing. Finally, on January 30, 2023, Dr. Pustilnik released a death certificate that classified Mr. Atkinson's death as a homicide. TAC ¶¶47-48, ROA 1516. At that time, the Commissioner Defendants were already in possession of documents indicating that

Lubbock County – Dr. Pustilnik's previous employer – had hired someone to evaluate his work because "the cause of death certification [offered by Dr. Pustilnik in one of his cases] was medically illogical, and invoked an unsubstantiated possibility for homicidal injury." ROA 32. Yet in similar circumstances, Fort Bend County never exercised any supervision, *e.g.*, by hiring someone to review Dr. Pustilnik's work like Lubbock County had done. For that reason, the TAC alleges that Dr. Pustilnik "falsified Mr. Atkinson's death certification, with the knowledge and approval of the remaining Defendants…" TAC ¶2, ROA 1505.

In *Covington v. City of Madisonville*, this Court subjected a police chief to supervisory liability because he ignored warnings that a subordinate was trying to frame someone on drug charges. 812 F. App'x 219, 228–29 (5th Cir. 2020). In this case, the Commissioner Defendants ignored repeated warnings that Dr. Pustilnik was retaliating against Plaintiff. Under those circumstances, their failure to act was "deliberate indifference to violations of [Plaintiff's] constitutional rights committed by their subordinate," *Porter v. Epps*, 659 F.3d 440, 446, and for that they should be held liable.

## CONCLUSION

Plaintiff properly pleaded all of her claims, and the district court erred by dismissing them. This case should be reversed and remanded for further proceedings.

Respectfully submitted,

**/s/ Eden P. Quainton**
Eden P. Quainton, *pro hac vice*
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
(212) 419-0575
(212) 376-5699
*eden.quainton@quaintonlaw.net*

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorneys for Plaintiff / Appellant
Yvette Atkinson**

## CERTIFICATE OF SERVICE

A copy of Appellant's Brief was filed electronically on February 28, 2026, which should result in automatic notification and service on counsel for all of the Defendants / Appellees on February 28, 2026.

**/s/ Ty Clevenger**
Ty Clevenger

# CERTIFICATE OF COMPLIANCE

According to the software used to prepare this brief, the brief contains 11,988 words on pages 1-50, excluding the parts exempted from the word count by the local rules.

**/s/ Ty Clevenger**
Ty Clevenger