Case No. 25-20513

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
―――――――――――――――――――

**Yvette S. Atkinson,**
*Plaintiff – Appellant*


*v.*


**Stephen Pustilnik; J.P. George; Vincent Morales; Grady Prestage; W.A. "Andy" Meyers; Kenneth R. DeMerchant; Fort Bend County, Texas; Dexter L. McCoy,**
*Defendants – Appellees*

―――――――――――――――――――


On Appeal from the U.S. District Court for the
Southern District of Texas (Houston Division)
Honorable Andrew M. Edison, Presiding
Civil Action No. 4:22-cv-04315

―――――――――――――――――――


## APPELLANT'S REPLY BRIEF
―――――――――――――――――――

Eden P. Quainton, *pro hac vice*
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
(212) 419-0575
(212) 376-5699
*eden.quainton@quaintonlaw.net*

Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979)530-9523 (fax)
*tyclevenger@yahoo.com*

*Counsel for Plaintiff / Appellant Yvette Atkinson*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................iv

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................6

    I.   The First Amendment retaliation claim was adequately pleaded. .................8

        A. The "missing" language about Plaintiff's curtailed speech is not missing at all.................................................................................8

        B. The falsification claim rests on Ms. Atkinson's own protected speech; the delay theory is preserved; and the defendants' qualified-immunity attack fails on both. ..............................................9

    II.   The due-process claims were adequately pleaded. ....................................13

        A.   Plaintiff had a property interest in a *final* death certificate..............13

        C.   The insurance-proceeds property interest was pleaded....................15

        D.   Substantive due process is independently sufficient.........................18

    III.   The equal-protection claims were adequately pleaded..............................19

        A. The statutory duty to file a death certificate defeats *Engquist*............19

        B. Comparator adequacy is fact-intensive and not properly resolved on the pleadings................................................................................22

        C. *Arlington Heights* is not a new theory; it is how discriminatory intent has always been pleaded. ..................................................................23

    IV.   Dismissal with prejudice was an abuse of discretion.................................24

        A. *McLemore* controls and was not distinguished. .................................24

        B. The agreed scheduling order contained a discovery carve-out. ..........25

C. "Deliberate omission" is not waiver. ..................................................26

D. No Rule 59 motion was required where the with-prejudice nature of the dismissal was itself unexplained. .................................................28

V. The derivative claims against the County survive. ....................................29

A. If the underlying constitutional violations are adequately pleaded, the derivative claims survive. ................................................................29

B. The ratification theory rests on affirmative endorsement, not bare inaction. ..........................................................................................29

C. Supervisory liability survives under *Covington*. ..................................30

D. Bystander liability and *Monell* theories are not foreclosed at the pleadings stage. .............................................................................31

CONCLUSION ...................................................................................................32

CERTIFICATE OF SERVICE ..........................................................................33

CERTIFICATE OF COMPLIANCE ..................................................................34

# TABLE OF AUTHORITIES

**CASES**

*Ahmed v. City of Natchez, MS*,
No. 5:21-CV-58, 2024 WL 1443181 (S.D. Miss. Apr. 3, 2024).... 1 n.1

*Anderson v. Harris County*,
98 F.4th 641 (5th Cir. 2024) ........................................................ 29

*Anderson v. Valdez*,
845 F.3d 580 (5th Cir. 2016) ........................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................... 31

*Atkinson v. Pustilnik*,
No. 4:22-CV-04315, 2025 WL 2856557 (S.D. Tex. Oct. 8, 2025)...... 4

*Barron v. United States*,
111 F.4th 667 (5th Cir. 2024) ................................................. 1 n.1, 2

*Bd. of Regents v. Roth*,
408 U.S. 564 (1972)...................................................................... 15

*Bennett v. Slidell*,
697 F.2d 657 (5th Cir. 1983) .............................................. 1 n.1, 2, 17

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) .................................................... 1 n.1

*Block v. Texas Bd. of Law Exam'rs*,
952 F.3d 613 (5th Cir. 2020) ........................................................ 27

*Boazman v. Econ. Lab'y, Inc.*,
537 F.2d 210 (5th Cir. 1976) .............................................. 1 n.1, 23

*Boudreaux v. La. State Bar Ass'n*,
3 F.4th 748 (5th Cir. 2021)................................................. 1 n.1, 2, 26

*Brown v. Lee*,
371 S.W.2d 694 (Tex. 1963) ................................................ 15

*Burge v. Pearl River County*,
103 F. App'x 823 (5th Cir. 2004) ........................................... 9

*Cantu v. Austin Police Dep't*, No. 1:21-CV-00084,
2021 WL 5599648 (W.D. Tex. Nov. 30, 2021) ............................. 1 n.1

*Cates v. Int'l Tel. & Tel. Corp.*,
756 F.2d 1161 (5th Cir. 1985) ................................... 1 n.1, 26

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ...................................................... 30

*Colson v. Grohman*,
174 F.3d 498 (5th Cir. 1999) ......................................... 1 n.1

*Comcast Corp. v. Houston Baseball Partners LLC*,
627 S.W.3d 398 (Tex. App. 2021) ........................... 1 n.1, 13

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ................................... 1 n.1, 16, 17

*Covington v. City of Madisonville*,
812 F. App'x 219 (5th Cir. 2020) .................... 1 n.1, 2, 30, 31

*Crowder v. Sinyard*,
884 F.2d 804 (5th Cir. 1989) .............................................. 8

*Cutrera v. Bd. of Supervisors of La. State Univ.*,
429 F.3d 108 (5th Cir. 2005) ........................................ 14, 15

*DeFrancesco v. Robbins*,
136 F.4th 933 (9th Cir. 2025) ........................................ 9, 10

*Doe v. Prairie View A & M Univ.*,
No. 24-20128, 2025 WL 2222991 (5th Cir. Aug. 5, 2025) ............... 28

*Dussouy v. Gulf Coast Inv. Corp.*,

660 F.2d 594 (5th Cir. 1981) ...................................................... 1 n.1

*Engquist v. Or. Dep't of Agric.*,
553 U.S. 591 (2008) ................................................... 2, 18, 19

*Estate of Cervin v. Comm'r*,
111 F.3d 1252 (5th Cir. 1997) ....................................... 15

*Fannon v. Patterson*,
2014 WL 4273337 (S.D. Ohio Aug. 29, 2014) ................... 10

*Fennell v. Marion Indep. Sch. Dist.*,
804 F.3d 398 (5th Cir. 2015) ......................................... 22

*Foman v. Davis*,
371 U.S. 178 (1962) ............................................. 5, 26, 28

*Fraire v. City of Arlington*,
957 F.2d 1268 (5th Cir. 1992) ....................................... 29

*Gaines v. Wardynski*,
871 F.3d 1203 (11th Cir. 2017) ...................................... 9

*George v. SI Group, Inc.*,
36 F.4th 611 (5th Cir. 2022) ......................................... 13

*Gomez v. H. Yturria Land & Cattle Co.*,
2005 WL 1981496 (Tex. App. Aug. 18, 2005) ................... 12

*Haitian Refugee Ctr. v. Civiletti*,
614 F.2d 92 (5th Cir. 1980) ........................................... 24

*Hale v. Townley*,
45 F.3d 914 (5th Cir. 1995) ........................................... 8

*Hart v. Bayer Corp.*,
199 F.3d 239 (5th Cir. 2000) ................................. 1 n.1, 26

*Heffernan v. City of Paterson*,
578 U.S. 266 (2016) ............................................... 11, 12

*Herring v. Blakeley*,
385 S.W.2d 843 (Tex. 1965) ................................................. 1 n.1, 2, 15

*Hitt v. City of Pasadena*,
561 F.2d 606 (5th Cir. 1977) ........................................................ 1 n.1

*Hope v. Pelzer*,
536 U.S. 730 (2002)................................................................. 1 n.1, 10

*Houston v. El Paso Prod. Co.*,
179 F. App'x 213 (5th Cir. 2006) ................................................ 1 n.1

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) ............................................................ 2, 20

*In re Refco Sec. Litig.*,
779 F. Supp. 2d 372 (S.D.N.Y. 2011) ..................................... 1 n.1, 27

*Integrity Collision Ctr. v. City of Fulshear*,
837 F.3d 581 (5th Cir. 2016) .............................................................. 19

*Jackson v. Procunier*,
789 F.2d 307 (5th Cir. 1986)................................................. 1 n.1, 2, 17

*Johnson v. Johnson*,
385 F.3d 503 (5th Cir. 2004) ................................................ 1 n.1, 2, 21

*Jones v. Fransen*,
857 F.3d 843 (11th Cir. 2017) .............................................................. 9

*Kennedy v. City of Arlington*,
165 F.4th 937 (5th Cir. 2026)............................................................. 29

*Khoury v. Thota*,
No. 20-20578, 2021 WL 3919248 (5th Cir. Sept. 1, 2021)................ 27

*Lauer v. Travis Cnty. Med. Examiners*,
2014 WL 4402233 (Tex. App. 2014) .................................................. 19

*Law v. Medco Rsch., Inc.*,
113 F.3d 781 (7th Cir. 1997) ................................................................. 1

*Law v. Ocwen Loan Servicing, L.L.C.*,
587 F. App'x 790 (5th Cir. 2014) ...................................................... 27

*Lewis v. Eufaula City Bd. of Educ.*,
922 F. Supp. 2d 1291 (M.D. Ala. 2012) ............................................ 10

*Liberte Capital Group, LLC v. Capwill*,
421 F.3d 377 (6th Cir. 2005) ............................................. 1 n.1, 2, 16

*Local 342 v. Town Bd. of Town of Huntington*,
31 F.3d 1191 (2d Cir. 1994) .............................................................. 16

*Lozman v. City of Riviera Beach*,
585 U.S. 87 (2018) ............................................................................... 8

*Marker v. Prudential Ins. Co. of Am.*,
273 F.2d 258 (5th Cir. 1959) ........................................................ 1, 12

*McClaine v. Boeing Co.*,
544 F. App'x 474 (5th Cir. 2013) ...................................................... 28

*McLane Champions, LLC v. Houston Baseball Partners LLC*,
671 S.W.3d 907 (Tex. 2023) ............................................................. 13

*McLemore v. Lumen Techs., Inc.*,
No. 25-30264, 2026 WL 252698 (5th Cir. Jan. 30, 2026) . 5, 22, 23, 27

*McLin v. Ard*,
866 F.3d 682 (5th Cir. 2017) .............................................................. 9

*Morgan v. Swanson*,
659 F.3d 359 (5th Cir. 2011) ............................................................ 10

*N. Miss. Commc'ns, Inc. v. Jones*,
792 F.2d 1330 (5th Cir. 1986) ..................................................... 1 n.1

*Nailon v. Univ. of Cincinnati*,
715 F. App'x 509 (6th Cir. 2017) ......................................................... 10

*Nestor Colon Medina & Sucesores, Inc. v. Custodio*,
964 F.2d 32 (1st Cir. 1992)............................................................. 1 n.1

*Ortiz v. Consol. Edison Co. of N.Y., Inc.*,
801 F. Supp. 3d 260 (S.D.N.Y. 2025) ............................................. 1 n.1

*Phillips v. Washington Legal Found.*,
524 U.S. 156 (1998).......................................................................... 16

*Porch.com v. Gallagher Re, Inc.*,
No. 25-10489, 2026 WL 903543 (5th Cir. Apr. 2, 2026) .................. 28

*Porter v. Epps*,
659 F.3d 440 (5th Cir. 2011) ........................................................ 30, 31

*Reed v. Goertz*,
598 U.S. 230 (2023)................................................................. 1 n.1, 17

*Rolf v. City of San Antonio*,
77 F.3d 823 (5th Cir. 1996) .......................................................... 1 n.1

*Rosales-Mireles v. United States*,
138 S. Ct. 1897 (2018)............................................................. 1 n.1, 17

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ............................................................ 27

*Rountree v. Dyson*,
892 F.3d 681 (5th Cir. 2018) ............................................................ 19

*Roy v. City of Monroe*,
950 F.3d 245 (5th Cir. 2020) .............................................................. 9

*Russell v. City of Lexington*,
2025 WL 875808 (S.D. Miss. Mar. 20, 2025)...................... 1 n.1, 2, 21

*Shakeri v. ADT Sec. Servs., Inc.*,

816 F.3d 283 (5th Cir. 2016) ................................................ 1 n.1, 2, 7, 8

*Simi Investment Co. v. Harris County*,
236 F.3d 240 (5th Cir. 2000) ................................................ 1 n.1, 2, 17

*Skalsky v. Indep. Sch. Dist. No. 743*,
772 F.3d 1126 (8th Cir. 2014) ........................................................ 10

*Spivey v. Chitimacha Tribe of La.*,
79 F.4th 444 (5th Cir. 2023) ........................................................ 1 n.1

*Stratta v. Roe*,
961 F.3d 340 (5th Cir. 2020) ........................................................ 20

*Stripling v. Jordan Prod. Co., LLC*,
234 F.3d 863 (5th Cir. 2000) .................................................... 1 n.1, 28

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
975 F.2d 1134 (5th Cir. 1992) ........................................................ 24

*Thompson v. N. Am. Stainless, LP*,
562 U.S. 170 (2011) ................................................................ 10, 12

*Torch Liquidating Trust ex rel. Bridge Assocs. v. Stockstill*,
561 F.3d 377 (5th Cir. 2009) ........................................................ 1 n.1

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
336 F.3d 375 (5th Cir. 2003) ........................................................ 27

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ................................................................ 21

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000) ................................................................ 20

*Washington v. Davis*,
426 U.S. 229 (1976) ............................................................ 1 n.1, 22

**STATUTES**

Tex. Code Crim. Proc. Ann. art. 49.14 ......................................... 17, 18

Tex. Code Crim. Proc. Ann. art. 49.25 ......................................... 17, 18

Tex. Code Crim. Proc. Ann. art. 49A.119 ............................. 1 n.1, 2, 18

Tex. Health & Safety Code Ann. § 191.052 ............................ 1 n.1, 12

Tex. Health & Safety Code Ann. § 193.005 .............................. 1 n.1, 2

**RULES**

Fed. R. Civ. P. 8 ............................................................................... 22

Fed. R. Civ. P. 12(b)(6) ............................................. 14, 21, 26, 28, 31

Fed. R. Civ. P. 15 ............................................................................. 28

Fed. R. Civ. P. 59 ......................................................................... 27, 28

Fed. R. Civ. P. 60 ......................................................................... 27, 28

# INTRODUCTION

Defendants' response briefs are remarkable primarily because of their failure to respond to the issues raised in Plaintiff's brief. As Judge Richard Posner warned almost 30 years ago, failure to contest an adversary's points is "not necessarily a waiver, but it is a risky tactic, and sometimes fatal." *Law v. Medco Rsch., Inc.*, 113 F.3d 781, 787 (7th Cir. 1997). Defendants completely ignored 28 cases and two statutes,[1] including the following:

- Tex. Code Crim. Proc. art. 49A.119 and Tex. Health & Safety Code § 193.005(d) prove conclusively that Dr. Pustilnik failed to perform a ministerial duty, so *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) does not apply to his class-of-one defense. Neither brief addresses those statutes.

- *Shakeri v. ADT Sec. Services* is binding authority that forecloses Defendants' argument that Plaintiff abandoned her First Amendment delay theory. Neither brief addresses *Shakeri* at all.

- *Simi Investment*, *Bennett v. Slidell*, and *Jackson v. Procunier* are binding Fifth Circuit authority for a substantive due process claim. Neither brief

---

[1] *Compare* the following cases and statutes from the Table of Authorities ("TOA") in Appellant's Brief (Doc. 28) *with* TOAs in Brief of Appellee Stephen Pustilnik ("Pustilnik Br.")(Doc. 29) and Brief of Appellees Fort Bend County and its Commissioners ("County Br.")(Doc. 41): *Shakeri v. ADT Sec. Servs., Inc.*, *Hope v. Pelzer*, *Barron v. United States*, *Boudreaux v. La. State Bar Ass'n*, *Torch Liquidating Trust ex rel. Bridge Assocs. v. Stockstill*, *In re Refco Sec. Litig.*, *Ortiz v. Consol. Edison*, *County of Sacramento v. Lewis*, *Rosales-Mireles v. United States*, *Reed v. Goertz*, *Simi Inv. Co. v. Harris County*, *Bennett v. Slidell*, *Jackson v. Procunier*, *Comcast Corp. v. Houston Baseball Partners LLC*, *Liberte Capital Grp., LLC v. Capwill*, *Ahmed v. City of Natchez, MS*, *Johnson v. Johnson*, *Russell v. City of Lexington*, *Washington v. Davis*, *Boazman v. Econ. Lab'y, Inc.*, *Stripling v. Jordan Prod. Co., LLC*, *Dussouy v. Gulf Coast Inv. Corp.*, *Hart v. Bayer Corp.*, *Cates v. Int'l Tel. & Tel. Corp.*, *Hitt v. City of Pasadena*, *Spivey v. Chitimacha Tribe of La.*, *Houston v. El Paso Prod. Co.*, *Covington v. City of Madisonville,* Tex. Code Crim. Proc. Ann. art. 49A.119, and Tex. Health & Safety Code § 193.005(d)

addresses those cases or meaningfully engages the substantive due process claim at all.

• *Hu v. City of New York*, *Johnson v. Johnson*, and *Russell v. City of Lexington* all hold that comparator analysis is fact-intensive and improper at the motion-to-dismiss stage. *Johnson* is binding authority. All three cases are unaddressed (Pustilnik cites *Hu* but for an entirely different premise).

• *Covington v. City of Madisonville* is the closest factual analog on supervisory liability; neither brief addresses it.

• *Barron v. United States* and *Boudreaux v. La. State Bar Ass'n* hold that no "magic words" are required for federal pleading; *Bridge Assocs. v. Stockstill* requires properly drawn inferences in plaintiff's favor on a motion to dismiss. Defendants ignored all three cases.

In her opening brief, Plaintiff explained how the district court contradicted itself by accepting the Third Amended Complaint ("TAC") despite Defendants' opposition, implicitly finding that the TAC stated valid claims, allowing discovery to proceed for a year at great expense, and then suddenly reversing course and dismissing the entire case with prejudice, largely on the basis of a missing sentence. Appellant's Br. 23-28 (citing the record). She further explained in detail how the Defendant's sandbagged her and played "gotcha," withholding their pleading objections while the proposed TAC was being considered by the district court and then waiting until the deadline for amendments had passed to assert their arguments about the missing sentence. Appellant's Br. 26. Defendants' briefs ignore all of that procedural history, and no wonder. None of it can be reconciled with Fed. R. Civ. P. 8(e): "Pleadings must be construed so as to do justice." If the pleadings are taken as true, as they must be at this stage, *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir.

2

2024), then a medical examiner fabricated government records in order to impugn a grieving widow, deny her access to life insurance proceeds, and impugn her as a murder suspect. Yet here we are almost four years later quibbling over a missing sentence from a 43-page complaint. Clearly, the pleadings were not "construed so as to do justice." If the district court thought it made a mistake by accepting the TAC for filing, then it should have permitted amendments to correct the problem rather than penalizing Plaintiff by dismissing her claims with prejudice.

Defendants' briefs also are remarkable for their misrepresentations. Pustilnik states emphatically, for example, that Plaintiff never pleaded a loss of insurance benefits as part of her due process claim. Pustilnik Br. 27. He devotes an entire page, complete with a graphic and excerpts from the TAC, to make his point. *Id*. He insists that he is quoting the complaint "verbatim," *id*., but he doesn't bother telling the Court that he is making some "verbatim" omissions, namely the following:

> "Plaintiff was entitled to receive $1 million in death insurance benefits, and she needed (and still needs) that money to keep the family business in operation and to support her son." TAC ¶16, ROA 1507.

> "Upon the death of her husband, Plaintiff had a substantive property interest in the timely issuance of an accurate death certificate necessary among other things to apply for insurance benefits…" TAC ¶102, ROA 1530.

The latter quote appears directly under the heading "Violation of Substantive Due Process," and merely one paragraph ahead of the paragraph that Pustilnik quoted so selectively in his brief. TOA ¶102, ROA 1530. With respect to the procedural due

process claim, "Plaintiff reallege[d] and incorporate[d] by reference each and every allegation set forth in the foregoing paragraphs above." TAC ¶107, ROA 1531. Thus Plaintiff pleaded the insurance proceeds as part of both of her due process claims, and it is disingenuous for Pustilnik to pretend otherwise.

Plaintiff should address another factual misrepresentation before proceeding to the legal arguments. Defendants repeatedly claim that Plaintiff filed "five complaints," received "five opportunities to amend," and now asks this Court for a "sixth bite at the apple." *E.g.*, County Br. iv, 2, 5, 28, 31; Pustilnik Br. ii, 3, 7, 38. That framing supplies most of the rhetorical force of Defendants' abuse-of-discretion argument, but it is false. The docket reflects *three* opportunities to amend, not five – a count the district court itself confirmed, *Atkinson v. Pustilnik*, No. 4:22-CV-04315, 2025 WL 2856557, *10 – but even that doesn't tell the full story. The complaint submitted on August 2, 2024, for example, was unopposed and merely corrected the omission of a defendant's name in the opening paragraph (*see* ROA 890; *compare* ROA 847 with ROA 892; and *see* August 5, 2024 Minute Entry (ROA 9)), yet Defendants count that as a separate complaint. In each version after the original, most of the amendments reflected subsequent events or newly-discovered evidence. *Compare* First Amended Complaint ("FAC") ¶¶ 28-40, ROA 123-130 ("Newly-discovered facts") *with* Original Complaint, ROA 1-26; *compare* Second Amended Complaint ("SAC") ¶¶31-32, 36-40, and fn.1, ROA 199-205, *with* FAC;

4

and *compare* Third Amended Complaint ("TAC") ¶¶42, 49, and 55-70, ROA 902, 904, and 906-912, *with* SAC. In significant part, Plaintiff was trying to satisfy the district court's (and Defendants') ongoing demands for more specific comparators in support of her equal protection claim, even though specific comparators are <u>not</u> required in the pleadings under Fifth Circuit law. *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004); *see also Russell v. City of Lexington*, 2025 WL 875808, at *10 (S.D. Miss. Mar. 20, 2025) (citing cases). One can see all of the additional facts that Plaintiff added just attempting to satisfy that legally unwarranted demand. *Compare* FAC ¶33 *with* Original Complaint and TAC ¶¶55-70 *with* SAC ¶33. There was never a history of offering futile amendments, thus Defendants have manufactured a false narrative out of whole cloth. Meanwhile, most of the delays in the district court were due to judicial deliberation, not unresponsiveness on the part of Plaintiff. The district court spent almost ten months deliberating on the motions to dismiss the SAC, *compare* Dkt. #35 and #36 *with* Dkt. #37, ROA 7, and almost eight months deliberating on the motions to dismiss the TAC. *Compare* Dkt. #80 and #81 *with* Dkt. #98, ROA 12-13. It is disingenuous for Defendants to fault Plaintiff for those delays, or to pretend that Plaintiff's amendments reflect some sort of underlying futility in her claims.

Defendants overlook a bigger issue in their haste to rewrite the procedural history, namely the fact that the district court never explained why it dismissed

Plaintiff's claims with prejudice. Defendants obviously are trying to supply a rationale for dismissing the case with prejudice, but that is not their prerogative. *McLemore v. Lumen Techs., Inc.* holds that the <u>district court</u> must explain not just why it dismissed the claims, but *why it dismissed them with prejudice*. 2026 WL 252698 (5th Cir. Jan. 30, 2026) (citing and quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Failure to do so is reversible error. *Id*. Appellees conflate the district court's explanation of *why* the complaint was dismissed with an explanation of *why dismissal was with prejudice rather than without*. *McLemore* requires the latter, and the district court failed that test. Pustilnik does not address *McLemore* at all.

Finally, on the dismissal-with-prejudice question, the County's new "invited-error" theory ignores the express carve-out in the scheduling order itself. Appellant's agreement to a final amendment was subject to a carve-out for claims based on newly discovered information—precisely the slander-campaign claims (Pustilnik's false statements to county officials that the Atkinsons were involved in "shady business dealings" and a "pyramid scheme") that Appellant was developing in discovery when the case was dismissed. ROA 1239, 1247, 1249. Neither Appellee addresses the consequences of dismissal-with-prejudice for the related *Atkinson II* proceeding, in which Pustilnik is now asserting *res judicata* based on the very with-prejudice characterization Plaintiff challenges here. The with-versus-without prejudice distinction is therefore not academic.

6

Given the number of omissions and the seriousness of some of the misrepresentations, Plaintiff respectfully urges the Court to cite-check Defendants' briefs very carefully. For the reasons set forth above and those set forth below, the judgment of the district court should be reversed.

# ARGUMENT

## I. The First Amendment retaliation claim was adequately pleaded.

### A. The "missing" language about Plaintiff's curtailed speech is not missing at all.

In her opening brief, Plaintiff explained that she originally asserted two separate First Amendment retaliation claims against Pustilnik: one based on delays and another based on falsification of a government record. Appellant's Br. 14-15. Those claims were found, respectively, in Paragraphs 42 and 43 of the SAC. *Id.* (citing the record). The lower court dismissed the delay claim and upheld the falsification claim. *Id.* (citing the record). Plaintiff then amended her complaint, and the TAC omitted the language from the dismissed claim, *i.e.*, the language previously found in Paragraph 42. *Id.* (citing the record). From this, Defendants and the trial court concluded that Plaintiff no longer had any "curtailment" language and therefore her remaining First Amendment claim had to be dismissed. That argument, however, is foreclosed by *Shakeri v. ADT Sec. Services*. No wonder both Pustilnik and the County Defendants ignored that case in their respective briefs.

Under the *Shakeri* holding, a plaintiff need not include a dismissed claim in an amended complaint because that dismissed claim is still preserved for appeal as if it were part of the live complaint. In other words, the "curtailment" language

from Paragraph 42 of the SAC is still squarely before this Court, regardless of whether it was repleaded in the TAC. In a footnote in her brief, Plaintiff explained that if Paragraph 42 is still before the Court for purposes of her First Amendment delay claim, then it should also be before the Court for purposes of her First Amendment fabrication claim. There are only two options: Paragraph 42 is either still a part of this case or it is not, and *Shakeri* holds that it is. Defendants do not and cannot dispute this. Instead, they ignore the case and hope that everyone else forgets about it. But *Shakeri* is alive and well, both First Amendment claims are still before the Court, and the "missing" language about curtailment is not missing at all.

### B. The falsification claim rests on Ms. Atkinson's own protected speech; the delay theory is preserved; and the defendants' qualified-immunity attack fails on both.

Appellees devote substantial space to arguing that no clearly established law recognized a "sibling-speech" retaliation claim, and from that they argue that they are entitled to qualified immunity. Pustilnik Br. 15; County Br. 8–16. If that argument applies at all, it only applies to Plaintiff's First Amendment delay theory, because the falsification theory rests on Plaintiff's <u>own</u> actions in filing this lawsuit and not her brother's speech. *See* TAC ¶¶47-48, 52, 97, ROA 1516-17, 23 (Plaintiff filed suit and then Pustilnik retaliated by filing falsified death certificate). And it was clearly established by 2020 that the First Amendment protects individuals who file

9

lawsuits against government officials. *See, e.g., Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018), *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) and *Crowder v. Sinyard*, 884 F.2d 804 (5th Cir. 1989).

With respect to the delay theory, it was clearly established by 2020 that government officials may not retaliate against a third party in response to a close affiliate's speech. Before discussing that, however, Plaintiff must first dispose of Defendants' reliance on *Burge v. Pearl River County*, 103 F. App'x 823, 826–27 (5th Cir. 2004) (per curiam). County Br. 14. *Burge* establishes nothing because, as Defendants themselves admit, the case was unpublished and non-precedential. More importantly, *Burge* predates nearly all of the authorities discussed below, *i.e.*, the very cases that now establish the contours of the Constitutional right. *Gaines v. Wardynski*, 871 F.3d 1203 (11th Cir. 2017) is readily distinguishable because it reflects the Eleventh Circuit's uniquely restrictive rule limiting "clearly established law" to Supreme Court, Eleventh Circuit, and state-supreme-court authority. *Jones v. Fransen*, 857 F.3d 843, 851–52 (11th Cir. 2017). [2] In contrast, the Fifth Circuit applies the broader "robust consensus" standard, *McLin v. Ard*, 866 F.3d 682, 695 (5th Cir. 2017) (and the Ninth Circuit recognized as much in *DeFrancesco v. Robbins*, 136 F.4th 933, 939 n.6 (9th Cir. 2025)), thus this Court looks beyond its

---

[2] Incidentally, *Gaines* itself upheld qualified immunity but then acknowledged that third parties are protected by the First Amendment, 871 F.3d at 1213, so now the law is "clearly established" in the Eleventh Circuit.

own case law and considers cases from other circuits. Defendants also rely on *Roy v. City of Monroe*, 950 F.3d 245, 255 (5th Cir. 2020) for the premise that two district court opinions by themselves cannot create clearly established rights for purposes of qualified immunity, but that premise is completely unremarkable here. Consider all of the authorities above plus Plaintiff's opening brief, where she quoted *Lewis v. Eufaula City Bd. of Educ.,* 922 F. Supp. 2d 1291, 1302–03 (M.D. Ala. 2012), Appellant's Br. 17-18. *Lewis*, in turn, cited five district court cases, one Second Circuit case, and a U.S. Supreme Court case for the premise that third parties can assert First Amendment retaliation claims, but that's just the tip of the iceberg. *DeFrancesco*, for example, lists a number of additional district court cases on point. *See also Nailon v. University of Cincinnati*, 715 F. App'x 509 (6th Cir. 2017), *Skalsky v. Independent School District No. 743*, 772 F.3d 1126 (8th Cir. 2014), *Fannon v. Patterson*, 2014 WL 4273337 (S.D. Ohio Aug. 29, 2014).

Plaintiff would note that "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), and "a case directly on point is not required," *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (*en banc*); *accord Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016). By those standards, the law was sufficiently clear prior to 2020. In the context of Title VII, for example, the U.S. Supreme Court held in 2011 that a company who retaliated against an employee's fiancé for her protected

activities could be held liable. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 131 S. Ct. 863, 866, 178 L. Ed. 2d 694 (2011) ("[A]ccepting the facts as alleged, [the fiancé] is not an accidental victim of the retaliation. Hurting him was the unlawful act by which [the employer] punished [the employee]. Thus, [the fiancé] is a person aggrieved with standing to sue under Title VII").

Five years later, in *Heffernan v. City of Paterson*, 578 U.S. 266 (2016), the high court held that government actors may not retaliate based on the *perceived* First Amendment activities of the plaintiff. City officials demoted a police detective after mistakenly *assuming* that he campaigned for the mayor's opponent, and the high court held that the relevant consideration was the motive of the government officials, not the underlying facts about who had actually done what. *Id*. at 273. That holding is acutely relevant here. If the TAC is construed in a light most favorable to Plaintiff and all inferences are drawn in her favor, as they must be at this stage, then Pustilnik retaliated against Plaintiff because he *assumed* that Plaintiff's brother was speaking on her behalf. It doesn't matter whether that assumption was correct; it only matters whether it motivated Pustilnik to act against her. *Heffernan*, 578 U.S. at 273. And what else would explain Pustilnik's motive for retaliating against her? Why else would Pustilnik spread slanderous rumors about Plaintiff, conduct a bogus firearms test that he was not qualified to perform, delay issuance of the final death certificate for years, and then falsify the contents of the death certificate to deny life insurance

proceeds to Plaintiff and impugn her as a murder suspect? Pustilnik *assumed* that Plaintiff was responsible for the criticism, and that motivated him to retaliate against her. If nothing else, *Heffernan* shows that government officials are liable to the *person actually injured* by First Amendment retaliation, and Plaintiff is the person who actually was injured by Pustilnik's retaliatory acts.

*Thompson* and *Heffernan* are binding Supreme Court authority, and either one of those cases by itself should have been sufficient to warn Pustilnik that his retaliation against Plaintiff was barred by the First Amendment. But those cases do not stand alone; they stand together and they are buttressed by the other authorities cited above (or mentioned within those cases). According to both Supreme Court authority and a "robust consensus" of authority elsewhere, Pustilnik should have known that the First Amendment protected Plaintiff from retaliation.

## II. The due-process claims were adequately pleaded.

### A. Plaintiff had a property interest in a <u>final</u> death certificate.

Pustilnik tries hard to distinguish *Marker v. Prudential Ins. Co. of Am.*, 273 F.2d 258 (5th Cir. 1959), but he ultimately concedes what he must: *Marker* recognized a death certificate entry as prima facie evidence. Pustilnik Br. 27. Texas law recognize it as prima facie evidence. Tex. Health & Safety Code Ann. § 191.052. Thus a death certificate entry is not purely a matter of opinion on par with an opinion

about the best movie of the year. Pustilnik relies heavily *Gomez v. H. Yturria Land & Cattle Co.*, 2005 WL 1981496 (Tex. App. Aug. 18, 2005), Pustilnik Br. 24, but he misreads the case and attacks a straw man. Plaintiff never suggested that *Gomez* directly recognized a constitutional property interest. Her argument, as her opening brief made clear (Appellant's Br. 38–42), was that *Gomez* holds that the manner-of-death entry is a fact, that §191.052 makes that fact *prima facie* evidence in subsequent proceedings, and that the falsification of a fact carrying the force of law has constitutionally significant consequences. That chain of analysis still holds. Pustilnik attacked only the first link, and he misread *Gomez* in the process.

Even on Defendants' own terms, the "opinion" framing does not insulate them from liability. As Texas courts recognize, "an opinion may be treated as an actionable statement of fact when the opinion is based on or buttressed with false facts." *Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 416 (Tex. App. 2021), *aff'd sub nom. McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907 (Tex. 2023). The Defendants completely ignored *Comcast,* but there is no way around it. References to plural "investigation[s]," for example, rest on a false predicate: Pustilnik's informal firing-range exercise—conducted by a medical doctor with no firearms credentials—was not a legitimate investigation. TAC ¶¶ 22–27, ROA 1509–1510.

Pustilnik also relies heavily on a document that *he* filed in the trial court, namely ROA 1585, but that is very misleading. He invokes *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022), for the proposition that the death certificate may be "judicially noticed on a motion to dismiss," Pustilnik Br. 5, then he engages in a bait-and-switch by making arguments based on a *preliminary* death certificate rather than the *final* death certificate referenced in the operative complaint. He recites as "fact" a series of propositions found nowhere in the complaint: that the certificate was "filed" on June 12, 2020; that the manner-of-death entry initially read "pending investigation"; that the "pending investigation" entry "effectively functioned as a placeholder"; and that Pustilnik "complied with that filing duty" when his deputy issued the initial certificate. Pustilnik Br. 6–7. These "facts" are extraneous and contrary to the pleadings. *George* permits incorporation only of documents "refer[red] to and that are central" to the complaint, and the complaint says nothing about a preliminary death certificate. Instead, the complaint alleges that no "final" death certificate listing the cause of death was issued for 958 days. TAC ¶¶ 17–18, 47–48, 55, 102, ROA 1507–1508, 1516–1518, 1530. The initial "placeholder" certificate is not the document Appellant's claim concerns. *Id*. Pustilnik's use of judicial notice to manufacture a factual narrative outside the complaint is misleading, and it is the sort of bootstrapping that Rule 12(b)(6) forbids.

15

### C. *The insurance-proceeds property interest was pleaded.*

Pustilnik argues that Appellant cannot "trade the pleaded 'death-certificate' interest for 'insurance proceeds' in briefing." Pustilnik Br. 26 (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005)). The argument fails twice over.

First, *the insurance-proceeds interest was pleaded*. Paragraph 16 of the TAC alleges that Plaintiff "was entitled to receive $1 million in death insurance benefits, and she needed that money to keep the family business in operation and to support her son." TAC ¶ 16, ROA 1507. Paragraph 102 alleges that the final death certificate "was necessary to obtain the life insurance proceeds." TAC ¶ 102, ROA 1530. The complaint thus pleads the insurance-proceeds property interest expressly and ties it to the death-certificate interest. *Cutrera*—which held that a new *claim* cannot be raised for the first time at summary judgment—does not apply when the property interest at issue is already pleaded and the briefing merely explains its legal significance.

Second, *the insurance-proceeds interest is property under Texas law*, and Texas law defines the contours of property interests for federal due-process purposes. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). The Texas Supreme Court has expressly held that the right to receive insurance proceeds is "property" in the nature of a chose in action. *Herring v. Blakeley*, 385 S.W.2d 843, 847 n.3 (Tex.

16

1965); *Brown v. Lee*, 371 S.W.2d 694, 696 (Tex. 1963). This Court applied the same rule in *Estate of Cervin v. Commissioner*, 111 F.3d 1252, 1256 (5th Cir. 1997).

Pustilnik's response is to dismiss *Herring* and *Brown* as "probate/community-property" cases, and *Cervin* as a "federal estate-tax case." Pustilnik Br. 27. The labels do not matter. *Roth* looks to state law for the existence of a property interest, not for the procedural context in which it is recognized, and something is either property or it is not. If Texas law treats life-insurance proceeds as "property" for purposes of community-property classification, probate, and federal estate-tax inclusion, then it treats them as property, and the Constitution protects that property. *See, e.g., Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998) (relying on a Texas Supreme Court case about interest on interpleader accounts to determine whether interest is a form of property that is protected by the Takings Clause).

Pustilnik's out-of-circuit authority, *Local 342 v. Town Board of Town of Huntington*, 31 F.3d 1191 (2d Cir. 1994), is inapposite: the plaintiff there was a union with no contractual right to continued payment of insurance premiums. 31 F.3d at 1196. Ms. Atkinson is a named beneficiary of a contract she paid for, and the Sixth Circuit has expressly recognized due-process rights for beneficiaries of life-insurance policies. *Liberte Capital Group, LLC v. Capwill*, 421 F.3d 377, 384 (6th Cir. 2005). Unsurprisingly, the Defendants ignore *Liberte* even though it was mentioned in the opening brief and even though it is the only federal appellate

decision either way about whether a beneficiary's interest in life-insurance proceeds is a property interest for due-process purposes.

### D. *Substantive due process is independently sufficient.*

Appellees' due-process arguments treat procedural and substantive due process as a single inquiry. Pustilnik Br. 21–33; County Br. 16–17. They are not. Appellant's opening brief separately developed the substantive due-process theory under *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Appellant's Br. 37–38. Substantive due process is violated by official conduct that "shocks the conscience," a standard met when conduct is "'intended to injure in some way unjustifiable by any government interest.'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (quoting *Lewis*, 523 U.S. at 849).

Neither of Defendants' briefs engages with *Lewis*, *Rosales-Mireles*, or the substantive due process "shocks the conscience" standard. Neither addresses Plaintiff's argument that the deliberate, retaliatory falsification of a government record to harm a grieving widow plainly meets that standard. Nor does either brief engage with *Simi Investment Co. v. Harris County*, 236 F.3d 240 (5th Cir. 2000) (interference with state-law property right states a substantive due-process claim), or *Bennett v. Slidell*, 697 F.2d 657 (5th Cir. 1983) (four-month permit delay states due-process claim), or *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986) (deliberate delay of mail interfering with court deadlines states substantive due-

process claim). *Reed v. Goertz*, 598 U.S. 230 (2023), the Supreme Court's most recent statement of procedural due-process elements, goes equally unaddressed. The Defendants' silence is damning.

Pustilnik's separate procedural-due-process argument—that Texas law "forbids" cross-examination at a medical examiner's inquest hearing (Pustilnik Br. 32–33)— is downright bizarre. It answers a question that nobody raised. The cited statutes, Tex. Code Crim. Proc. art. 49.14(d) and (h) and art. 49.25 § 6, govern statutorily authorized inquests in their statutory form. The complaint, however, alleges that Pustilnik instigated a sham investigation wherein he performed an unauthorized firearms test that he had no qualifications to perform, then he produced fabricated findings. TAC ¶¶ 22–27, 71, ROA.1509–1510. How that relates to Tex. Code Crim. Proc. art. 49.14(d) and (h) and art. 49.25 § 6 is a mystery to Plaintiff. A statutory inquest is indeed mentioned in Paragraph 71 of the TAC, but that same paragraph distinguishes the inquest from the firearms test. *See also* TAC ¶22-23, 25-27, ROA 6-7. Pustilnik got sued for conducting a sham firearms test with false findings, not because he restricted cross-examination at a statutory inquest hearing.

## III. The equal-protection claims were adequately pleaded.

### A. The statutory duty to file a death certificate defeats Engquist..

Appellees' *Engquist* argument depends on the premise that the medical examiner's conduct "by [its] very nature involves discretionary decisionmaking

based on a vast array of subjective, individualized assessments." Pustilnik Br. 35–37 (quoting *Engquist*, 553 U.S. at 603–04); County Br. 17. The premise is false.

Texas law imposes a mandatory duty to file a death certificate. Tex. Code Crim. Proc. Ann. art. 49A.119 (medical examiner "shall" issue a death certificate and "shall" record "the cause and manner of death"). Defendants ignore that statute, even though it was cited in the opening brief. Article 49A.119 is the foundation of Appellant's ministerial-duty argument and the dispositive point that distinguishes this case from *Engquist*. Appellant's Br. 32–33.

Pustilnik attempts to drive a wedge between the duty to file a certificate and the discretion to reach a particular manner-of-death opinion, conceding that Texas law requires the filing of a death certificate but maintaining that the manner-of-death determination is discretionary. Pustilnik Br. 36–37. That concession proves the point. Whatever the medical examiner's discretion as to the *content* of the manner-of-death determination, he had no discretion to *delay* the filing indefinitely. Appellant's equal-protection claim is fundamentally about the 958-day delay, contrasted with a county average of 49.5 days for suicides and 91 days for homicides. TAC ¶ 55, ROA.1518. That extraordinary disparity in performance of a *ministerial* duty distinguishes this case from *Engquist*. If Pustilnik wants to quibble about whether the 958-day delay was justified by the circumstances of the case that's fine, but it's a question of fact for the jury.

Pustilnik's reliance on *Lauer v. Travis County Medical Examiners*, 2014 WL 4402233 (Tex. App. 2014), confuses two different questions. Pustilnik Br. 35, 37. *Lauer* held that mandamus relief is unavailable to *change* a cause-of-death determination, because the substantive judgment is not ministerial. That is a remedies question applied to a separate issue, namely cause of death rather than duty to file. *Lauer* says nothing about whether the duty to *file* the certificate is ministerial. The Texas statute confirms that it is. Tex. Code Crim. Proc. Ann. art. 49A.119.

The post-*Engquist* Fifth Circuit cases Pustilnik invokes—*Integrity Collision Center v. City of Fulshear*, 837 F.3d 581 (5th Cir. 2016), and *Rountree v. Dyson*, 892 F.3d 681 (5th Cir. 2018)—involve *inherently* discretionary categories: choosing which contractor to use or whether to suspend a towing permit. Neither involves a mandatory duty. *Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020), by contrast, applied the *Olech* framework where a groundwater district was alleged to have applied rules unequally. 961 F.3d at 360–61. That is what happened here: Pustilnik carried out his statutory duty toward Plaintiff very differently compared to other survivors, namely because he delayed the issuance of the death certificate far longer than for any other survivor. Pustilnik's one-sentence response – "*Stratta* was not about an inherently discretionary judgment" (Pustilnik Br. 38) – concedes the point. The filing of a death certificate (versus the *finding* of the cause of death) "was not about an inherently discretionary judgment."

**B. Comparator adequacy is fact-intensive and not properly resolved on the pleadings.**

Appellees argue that Appellant pleaded no "valid comparator" and that statistics and decedent lists are not comparators. Pustilnik Br. 38–39; County Br. 17–18. The argument ignores controlling and persuasive authority.

In *Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019), the Second Circuit held that the "similarly-situated requirement" in equal-protection cases "is fact-intensive and not appropriately resolved on a motion to dismiss." 927 F.3d at 97. Plaintiff's opening brief cited that holding at length. Appellant's Br. 30–31. Neither responding brief acknowledged the rule. Pustilnik does cite *Hu* for an unrelated proposition (*see* Pustilnik Br. 39–40)—that "statistics cannot substitute for specific comparators"— while ignoring *Hu*'s broader and on-point holding that comparator analysis is improper at the 12(b)(6) stage. That selective use of authority does not engage the relevant rule.

This Court's own decision in *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), rejects the argument that an equal-protection plaintiff must identify a specific comparator in her complaint. The Southern District of Mississippi recently collected the authorities in *Russell v. City of Lexington*, 2025 WL 875808, at *10 (S.D. Miss. Mar. 20, 2025), citing *Johnson* for the same proposition. Appellant's Br. 30 & n.10. Neither response brief mentions *Johnson* or *Russell*. The silence is conspicuous, and it concedes a dispositive error because *Johnson* is binding authority in this Circuit.

22

### C. *Arlington Heights is not a new theory; it is how discriminatory intent has always been pleaded.*

Pustilnik argues that the *Arlington Heights* framework was "not pleaded" and cannot be invoked for the first time on appeal. Pustilnik Br. 49; County Br. 19. The argument confuses a *framework for evaluating evidence* with a *claim* or *theory*. *Arlington Heights* is not a cause of action; it is the Supreme Court's articulation of the categories of circumstantial evidence relevant to proving discriminatory intent in an Equal Protection claim. 429 U.S. at 266–68. The *claim* Appellant pleaded— intentional race-based disparate treatment in violation of the Equal Protection Clause—is the same claim *Arlington Heights* addresses. Citing *Arlington Heights* to explain how the pleaded facts support an inference of discriminatory intent is not raising a new theory. It is doing the work the Federal Rules of Civil Procedure invite at every stage. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Both Defendants rely on *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398 (5th Cir. 2015), for the proposition that conclusory allegations of animus are not enough. Pustilnik Br. 45–46; County Br. 18–19. Appellant agrees with the rule and does not rely on conclusory labels. The TAC pleads facts under every category of *Arlington Heights* evidence: a hostile interaction beginning with Ms. Atkinson's Hispanic-surnamed brother; a series of unprecedented departures from normal procedure (taking over the case from the deputy medical examiner who had

performed the autopsy, conducting an unauthorized firearms test, contradicting both the autopsy findings and the SLPD investigation); and an extreme disparity in delay against a Hispanic surviving spouse. TAC ¶¶ 5, 17–18, 22, 27, 34, 55–56, ROA 1505–1512, 1518. Pursuant to *Washington v. Davis*, 426 U.S. 229, 242 (1976), discriminatory intent "may often be inferred from the totality of the relevant facts." Neither Appellee engages with *Washington v. Davis*.

## IV. Dismissal with prejudice was an abuse of discretion.

### A. *McLemore controls and was not distinguished.*

The County attempts to distinguish *McLemore* by arguing that the district court did, in fact, "explain its decision." County Br. 30. The County's argument elides the distinction *McLemore* itself draws. The question is not whether the district court explained *why the complaint was dismissed* (it did, by reference to the missing curtailment allegation), but whether the district court explained *why the dismissal was with prejudice rather than without*. 2026 WL 252698, at \*2–3. The court never separately addressed the with-prejudice question—which is precisely the defect *McLemore* reversed for. *Id.* at \*3 ("any rationale for prejudice needed to come from the court at the time instead of from one of the parties months later in its brief on appeal."). Pustilnik does not engage with *McLemore* at all. Pustilnik Br. *passim*. Equally important, neither Appellee addresses *Boazman v. Economic Laboratory, Inc.*, 537 F.2d 210, 212–13 (5th Cir. 1976), which establishes that a dismissal with

prejudice that operates as a limitations bar is reviewed under a *heightened standard*. Appellant's opening brief cited *Boazman*. Appellant's Br. 27 n.8. Both Appellees treat the review as ordinary abuse of discretion. That framing is false.

### B. *The agreed scheduling order contained a discovery carve-out.*

The County's most striking new argument is the "invited-error" theory. County Br. 32–35. It contends that Plaintiff agreed in a scheduling order to file no further amendments, and so cannot now seek leave to file another, but that badly misrepresents the agreement and the scheduling order. The relevant text of the order is in the record: "Plaintiff agrees that no further amended or supplemental complaints will be filed after this date *except to assert potential claims upon a discovery of new information*." ROA 1502 (emphasis added). The carve-out was not boilerplate. Plaintiff's opening brief explains (Appellant's Br. 26–27) how she was actively litigating discovery and was preparing a Fourth Amended Complaint based on newly discovered evidence, namely Pustilnik's smear campaign in which he falsely told county officials that Mr. Atkinson and Ms. Atkinson were involved in "shady business dealings" and a "weird pyramid scheme." ROA 1239, 1247, 1249. That evidence was developed in depositions taken in 2025 and falls squarely within the order's carve-out for "new information."

The cases the County cites do not change this analysis. *Tel-Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134 (5th Cir. 1992), involved a party who

25

invited a venue transfer order and then appealed the very order it had requested. *Haitian Refugee Center v. Civiletti*, 614 F.2d 92 (5th Cir. 1980), involved a party who agreed to an injunction and then appealed it. Here, Appellant did not invite the order that is the actual subject of this appeal, *i.e.*, the October 8, 2025 dismissal with prejudice. The order Appellant agreed to was the scheduling order. The scheduling order itself contained the very carve-out the County now treats as nonexistent. In short: the County's premise—that Appellant agreed to an unconditional limit on further amendments—is contradicted by the text of the agreement itself.

### C. *"Deliberate omission" is not waiver.*

Pustilnik's most aggressive procedural argument is that Plaintiff's own opening brief "confirms that the omission was deliberate, not accidental," and so the omission cannot now be cured. Pustilnik Br. 56. The argument confuses a reasoned drafting choice with abandonment.

Plaintiff's opening brief explains that the curtailment allegation in Paragraph 42 of the SAC was specifically tied to the delay theory the district court had already dismissed in its May 2, 2024 order. Appellant's Br. 14–16. When the surviving falsification theory was the only one before the court, the chilling inquiry under *Keenan* was objective, and the supporting subjective allegation became (in Appellant's good-faith assessment) unnecessary surplusage. *Keenan*, 290 F.3d at 258–60. That assessment may or may not ultimately prove correct. But a reasoned

drafting decision made in light of the district court's own prior ruling is not waiver of a claim that remains plainly pleaded in Count I of the Third Amended Complaint. *See* TAC ¶¶ 85–89, ROA 1526–1527. Federal pleading requires "fair notice," not the rote inclusion of every conceivable supporting allegation. *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 756 (5th Cir. 2021).

Even on Pustilnik's framing, the appropriate response was leave to amend, not dismissal with prejudice. Plaintiff cited *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) ("[D]eficiencies do not normally justify dismissal without leave to amend"), and *Cates v. International Telephone & Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) (same), in his opening brief. Appellant's Br. 24. Neither of the Defendants' briefs responds to those cases.

The deeper problem with Pustilnik's framing is that he treats an attorney's reasoned interpretation of governing case law as if it were a stipulation. It is not. Plaintiff's reading of *Keenan* as objective—and her consequent assessment that the chilling-effect inquiry could be satisfied on the face of the falsification facts alone—was a litigation position, not a forfeiture. Litigation positions on pleading sufficiency are routinely tested on appeal; that is what de novo review of a Rule 12(b)(6) dismissal is for. If the Court concludes that an additional supporting allegation would have helped, the remedy is leave to amend, not preclusion. *Foman v. Davis*, 371 U.S.

27

178, 182 (1962). To hold otherwise would convert every contested pleading judgment into an irrevocable waiver of the underlying claim.

### D.  No Rule 59 motion was required where the with-prejudice nature of the dismissal was itself unexplained.

Defendants argue that Plaintiff's failure to file a Rule 59(e) or Rule 60(b) motion before appealing forecloses any challenge to the dismissal with prejudice. Pustilnik Br. 55; County Br. 31–32. The argument cannot be squared with *McLemore*. The *McLemore* appellant filed no Rule 59 or 60 motion either, and this Court reversed anyway. 2026 WL 252698, at \*2–3.  Pustilnik systematically misrepresents the holdings of *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003), *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003), *Block v. Texas Bd. of Law Exam'rs*, 952 F.3d 613, 619 & n.25 (5th Cir. 2020), *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 795–96 (5th Cir. 2014) (per curiam), and *Khoury v. Thota*, No. 20-20578, 2021 WL 3919248, at \*4–5 (5th Cir. Sept. 1, 2021), Pustilnik Br. 53-54, and the County Defendants likewise misrepresent the holdings of *Porch.com v. Gallagher Re, Inc.*, No. 25-10489, 2026 WL 903543, at \*2 n.2 (5th Cir. Apr. 2, 2026), *Doe v. Prairie View A & M Univ.*, No. 24-20128, 2025 WL 2222991, at \*4 (5th Cir. Aug. 5, 2025), and *McClaine v. Boeing Co.*, 544 F. App'x 474, 476–78 (5th Cir. 2013).  None of those cases holds that a plaintiff has a *post-judgment* duty to seek leave to amend via Rule 59, Rule 60, or any other procedure.  On the contrary, *all* of those cases deal

28

with Rule 15, and most of them are explicit about that. In fact, Plaintiff has not found a single case in any circuit suggesting that a plaintiff has an obligation to request *post-judgment* leave to amend. Defendants cannot fabricate new case law by stringing together long lists of inapposite opinions, and Plaintiff was under no obligation to seek relief pursuant to Rule 59 or 60.

Unsurprisingly, Defendants fail to address *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000), which defines "futility" for *Foman* purposes as failure to state a claim under the 12(b)(6) standard. By granting leave to file the TAC after Defendants had briefed their futility objections (ROA 931–951; ROA 1011–1014), the district court implicitly found that the proposed complaint was *not* futile under the same standard the court later applied to dismiss it. That logical inconsistency is itself an abuse of discretion under *Stripling* and *Foman*.

## V. The derivative claims against the County survive.

### A. *If the underlying constitutional violations are adequately pleaded, the derivative claims survive.*

The County's lead argument is that, because the "fifth" complaint allegedly pleads no plausible constitutional violation by Dr. Pustilnik, none of the derivative § 1983 theories can survive. County Br. 7–20. For the reasons forth above, that premise fails. If any of the underlying First Amendment, due-process, or equal-protection claims survive, the derivative claims survive with them. The district court, after all, offered no other reason for dismissing the derivative claims.

### B. The ratification theory rests on affirmative endorsement, not bare inaction.

The County characterizes Appellant's ratification theory as "after-the-fact inaction" and dismisses it on that basis under *Anderson v. Harris County*, 98 F.4th 641 (5th Cir. 2024), and *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992). County Br. 23. The complaint alleges considerably more than inaction. After Appellant's counsel wrote to all Commissioner Defendants on October 3, 2022, identifying Pustilnik's retaliation and bad-faith delay (ROA 211–212), the County did not remain silent. Through its counsel's October 5, 2022 letter, the County affirmatively *blamed Ms. Atkinson* for the delay and endorsed Pustilnik's decision to proceed with an unauthorized firearms test he had no qualifications to perform. TAC ¶ 32, ROA 1511. That is public adoption of the subordinate's position by the County's authorized speaker. Combined with the Commissioners' receipt of express written warnings about supervisory liability (TAC ¶¶ 36, 39, ROA 1512–1513) and their refusal to act, the complaint pleads policymaker approval of both the decision and its alleged basis, which is what *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), requires.

### C. Supervisory liability survives under Covington.

The supervisory-liability claim against the Commissioner Defendants survives independently under *Covington v. City of Madisonville*, 812 F. App'x 219

(5th Cir. 2020), in which this Court held a police chief liable for ignoring warnings that a subordinate was framing a citizen on drug charges. The complaint alleges that the Commissioner Defendants were warned repeatedly—by Mr. Sanchez beginning in 2020 (TAC ¶ 19), by counsel's October 3, 2022 letter (ROA 211–212), and by counsel's October 13, 2022 emails expressly warning of supervisory liability (TAC ¶¶ 36, 39, ROA 1512–1513)—that Pustilnik was engaged in ongoing retaliation. They also had documents indicating that Pustilnik's previous employer had hired an outside reviewer because his "cause of death certification was medically illogical, and invoked an unsubstantiated possibility for homicidal injury." ROA 32. They did nothing in response. That is "deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). The County's brief never engages with *Covington*, the closest factual analog. Although unpublished, *Covington* is persuasive on materially identical facts and applies the same *Porter v. Epps* framework.

### D. Bystander liability and Monell theories are not foreclosed at the pleadings stage.

The County treats bystander liability as requiring contemporaneous physical presence. County Br. 24–25. But the complaint pleads more: the Commissioner Defendants were placed on contemporaneous notice of an ongoing retaliation campaign, possessed authority to halt it, and chose not to act. The *Monell* theory likewise survives because the October 5, 2022 letter is the act of the County's

31

authorized representative speaking on behalf of the Commissioners Court itself, not the isolated act of an individual commissioner. TAC ¶ 32, ROA 1511. Whether these allegations ultimately prove sufficient is a question for further development. At the pleadings stage, taking the well-pleaded allegations as true, *Iqbal*, 556 U.S. at 678, they are enough to advance the case past Rule 12(b)(6).

# CONCLUSION

The judgment of the district court should be reversed, and the case remanded for further proceedings. In the alternative, if the Court concludes that any pleading deficiency remains, the case should be remanded with instructions to permit a further amendment, consistent with the carve-out in the agreed scheduling order and with the post-discovery facts Plaintiff was preparing to plead at the time of dismissal.

Respectfully submitted,

**/s/ Eden P. Quainton**
Eden P. Quainton, *pro hac vice*
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
(212) 419-0575
(212) 376-5699
*eden.quainton@quaintonlaw.net*

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorneys for Plaintiff / Appellant**
**Yvette Atkinson**

**CERTIFICATE OF SERVICE**

A copy of Appellant's Reply Brief was filed electronically on May 27, 2026, which should result in automatic notification and service on counsel for all of the Defendants / Appellees on May 27, 2026.

**/s/ Ty Clevenger**
Ty Clevenger

## CERTIFICATE OF COMPLIANCE

According to the software used to prepare this brief, the brief contains 7,670 words on pages 1-33, excluding the parts exempted from the word count by the local rules.

/s/ Ty Clevenger
Ty Clevenger